**Richmond.**

M. S. CAHOON, TREASURER, v. IRON GATE LAND AND IMPROVE-
MENT COMPANY AND ANOTHER.

DECEMBER 12, 1895.

1. CONSTITUTIONAL LAW—*Title of Act—Charter of Town of Iron Gate—
Town Partly in Two Counties.*—The title of the act incorporating the
town of Iron Gate (Acts 1889-90, page 194) is "An act to incor-
porate the town of Iron Gate, Virginia." Section 4 of the charter
enacts that the whole of the town of Iron Gate (a part of which
lies within the county of Botetourt) shall be deemed to be within
the county of Alleghany, and transfers all civil and criminal juris-
diction to the latter county. This section of the charter is in con-
flict with section 15, Article V., of the Constitution, which declares
that "no law shall embrace more than one object, which shall be
expressed in its title," and is therefore void. It is immaterial that
the territory sought to be transferred to Alleghany is only a small
portion of a large tract, which was once properly taxable in that
county, as the land has since been divided into small lots or parcels.

Argued at Staunton. . Decided at Richmond.

Appeal from a decree of the Circuit Court of Alleghany
county, pronounced August 27, 1894, in a suit in chancery
wherein the appellees were the complainants, and appellant
and another were the defendants.

*Reversed.*

The opinion states the case.

*Benjamin Haden*, for the appellant.

*R. L. Parrish*, for the appellees.

CARDWELL, J., delivered the opinion of the court.

In the petition for an appeal in this case several grounds are assigned upon which it is claimed that the act of the Legislature incorporating the town of Iron Gate, in this State, (Acts of Assembly 1889-90, p. 194,) should be held to be unconstitutional, but we need only consider whether the act is in conflict with section 15, Article V., of the Constitution of the State of Virginia, which section provides that "no law shall embrace more than one object, which shall be expressed in its title."

Prior to the passage of this act of incorporation the land on which the town of Iron Gate is laid out and divided into town lots formed one tract of land, all of which, except a small portion, lay in the county of Alleghany, the smaller portion being in the county of Botetourt, and the entire tract, containing less than 2,000 acres, was taxable, under section 476 of the Code, in the county of Alleghany. After the town of Iron Gate was laid out into lots by the Iron Gate Land and Improvement Company, the treasurer of Botetourt county sought to collect taxes on the lots within the county of Botetourt, and to prevent this the Iron Gate Land and Improvement Company and a purchaser of a lot from it filed a bill in the Circuit Court of Alleghany county, praying an injunction to restrain the collection of these taxes, alleging that, by the act of incorporation, all of the property within the limits of the town of Iron Gate was in the county of Alleghany, and liable only to taxes therein; and, further, that the taxes sought to be collected by the treasurer of Botetourt county had already been collected by the treasurer of Alleghany county. The injunction was awarded, and afterwards, by the decree appealed from, perpetuated.

The title of the act incorporating the town of Iron Gate is as follows: "An act to incorporate the town of Iron Gate,

Virginia." The preamble of the act is: "Whereas the town of Iron Gate, as laid out, is situated almost entirely in the county of Alleghany, and a small portion thereof is probably in the county of Botetourt; and whereas it is desired to incorporate the said town, and to have the whole of said town located in one county." Then follows the usual provisions of an act incorporating a town, which need not be noticed. But the fourth section of the act, out of which this controversy arises, is as follows:

"That the whole of the town of Iron Gate be deemed to be within the county of Alleghany, and the courts and the officers of said county of Alleghany shall have exclusive jurisdiction for the trial of all controversies of every kind and description, both civil and criminal, that may arise within said town, and for the collection of taxes, levies, and assessments of all kinds, and for all other purposes, as fully and completely as such courts and officers have jurisdiction in other parts of said county; provided, that nothing contained in this section shall modify, abridge, or in any manner alter the powers, rights, and duties allowed or imposed by law on any of the officers of said town of Iron Gate."

Section 4, when read in connection with the preamble of the act, plainly changes the boundary-line between the counties of Alleghany and Botetourt, putting a portion of the territory of Botetourt county into the county of Alleghany. This may be done by a proper act of the Legislature without conflict with the provisions of the Constitution; but the question to be determined here is, whether such a provision in this act incorporating the town of Iron Gate can be held to be within the scope of the title of the act, and not in conflict with section 15, Article V., of the Constitution. It is true, as contended by counsel for appellee, that the generality of a title is no objection to it, so long as it is not made a cover for legislation incongruous in itself, and with which, by no fair intendment, it can be considered as having a necessary or proper connection. Cooley on Const. Lim., sec. 144. But can it be maintained that the provision in this act, which

changes the boundary-line between the two counties, and puts a portion of the territory of the county of Botetourt into the county of Alleghany, is sufficiently embraced in the general object of the act, as expressed in the title, to escape the inhibition of section 15 of Article V. of the Constitution?

Judge Lewis, in discussing this provision in the Constitution, in *Board of Supervisors of Henrico County* v. *McGruder*, 84 Va. 832, says: " The provision is a wise one, of great public utility, and embodied in the Constitution of many of our sister States. Its object is to prevent surprise in legislation, by having the title of every act clearly express the object of the enactment, so that neither the members of the Legislature nor the people will be misled."

Judge Cooley, in treating of the subject, tersely states the reasons for this constitutional provision thus : " 1st, to prevent log-rolling legislation ; 2d, to prevent surprise or fraud upon the Legislature by means of provisions in bills of which the title gives no intimation, and which might therefore be overlooked and carelessly and unintentionally adopted ; and, 3d, to fairly apprise the people of the subjects of legislation that are being considered, in order that they may have the opportunity of being heard thereon, by petition or otherwise, if they shall so desire." Cooley on Const. Lim., sec. 143.

The provision in this act under consideration cannot, we think, be considered as germane to the one general object expressed in the title ; but, on the contrary, the fourth section of the act, read in connection with the preamble, is irreconcilable with the object expressed in the title. The matter of changing the boundary of a county, be the territory taken off ever so little, is a matter in which the people of the county are interested, and of which the title of the act purporting to thus affect their interests should fairly apprise them. This provision of the act cannot be sustained as germane to, or connected directly or indirectly with, the general object

expressed in the title. It is, therefore, in conflict with the constitutional provision quoted.

It is argued by the learned counsel for appellees " that it will be very inconvenient to have this little town in two counties, with appeals from justices, &c., &c., going in some instances to one county and in others to another "; but this argument could be more properly addressed to the Legislature than to the courts.

Inasmuch, however, as the striking from the act of all that relates to the changing of the boundary-line between the counties of Alleghany and Botetourt, and that confers upon the courts of Alleghany jurisdiction over the territory taken from Botetourt county, and gives to the officers of that county authority for the collection of taxes, levies, and assessments, &c., will leave a complete act, sensible, capable of being executed, and wholly independent of that which is rejected, it must be sustained as constitutional as to all matters not contained in the fourth section of the act ; but, for reasons stated, the fourth section of the act incorporating the town of Iron Gate must be held to be unconstitutional and void, and that when the tract of land formerly taxed in the county of Alleghany, under section 476 of the Code, was divided into lots, or smaller parcels, the lots or parcels lying within the county of Botetourt could be subjected to taxation only in the latter county. The decree appealed from is, in this respect, reversed and annulled, and this court will make such decree in the case as the Circuit Court of Alleghany county should have made, dissolving the injunction awarded, and declaring section 4 of the act of Assembly incorporating the town of Iron Gate (Acts 1889–90, p. 194) null and void.

*Reversed.*