# Richmond.

Miller, Trustee & Others v. Town of Pulaski.

January 14, 1909.

1. Municipal Corporations—*Amendment of Charters—Constitutional Law.*—It is within the power of the legislature to amend the charter of a municipal corporation, if it pursues the mode provided in article IV of the Constitution, and the special act is passed by a recorded vote of two-thirds of the members elected to each house, as provided by section 117 of the Constitution.

2. Eminent Domain—*Public Use—When a Judicial Question.*—Whether a particular use is public or not is a question for the judiciary, and not for the legislature, but if it is in fact public, the expediency of exercising the power of eminent domain, the instrumentalities to be used, and the extent to which the right shall be delegated are questions for the legislative branch of the government.

3. Eminent Domain—*Public Use.*—A use to be public need not be for the use and benefit of the whole public or State, or any large part of it. It may be for the inhabitants of a very small or restricted locality; but the use and benefit must be in common, not to particular individuals or estates.

4. Municipal Corporations—*Electric Lights—Public Use.*—The power and duty to supply the inhabitants of a town with electric lights is a public use, and the necessity for its exercise, and the extent to which it may be exercised, including the right to condemn property outside the territorial limits of the town are questions for the determination of the legislature, and are not open to enquiry before the courts.

5. Eminent Domain—*Public and Private Use Combined—Municipal Corporations.*—An act which authorizes a town to condemn land for the purpose of supplying the inhabitants of said town "or other persons, companies, or corporations" with electric lights or power embraces an object which is constitutional with one which is unconstitutional, and they are so united as to be inseparable, and hence the whole grant of power is unconstitu-

tional. The right to furnish lights or power to "other persons, companies or corporations" is a private use, and where a private use is so combined with a public use that the two cannot be separated the whole act is void.

Error to a judgment of the Circuit Court of Carroll county, on a petition to condemn land. Judgment for the petitioner. Defendants assign error.

*Reversed.*

The opinion states the case.

*W. M. Caldwell,* for the plaintiffs in error.

*J. C. Wysor,* and *Phlegar & Powell,* for defendant in error.

KEITH, P., delivered the opinion of the court.

The town of Pulaski filed its petition in the Circuit Court of the county of Carroll, in which it states that, by virtue of its charter and the general laws of Virginia, it has authority to erect, equip and operate electric light plants for the purpose of lighting its streets, and to sell light to individuals and corporations; that in pursuance of said power it owns an electric light plant, which it is now operating, and is furnishing lights for its streets and to the citizens of the town, but that it is wholly inadequate for its needs, and it is unable properly to light its streets with the present equipment, and is unable to carry out its contracts for light with its citizens; that the present plant is entirely too small for the size of the town, and the cost of operating the same is of necessity in excess of the returns therefrom, and there is a public necessity for the erection of a larger and better plant; that the town council have decided to acquire water power to operate said

plant, believing that such power is the best and most economical; that they have inspected numerous sites for the location of a power plant along the streams near the town, and have decided that the most available is the site situated on Big Reed Island Creek, in the county of Carroll, known as the "Narrows;" that for the purposes aforesaid it has acquired the right from all the lower riparian owners to divert the water of the creek across the "Narrows," and has purchased the fee simple title to what is known as the "Tunnel" along the course of the proposed diversion of the stream, and owns in fee simple land adjoining and surrounding said point; that J. E. Caldwell claims to have purchased from said riparian owners certain water rights, including the right to divert said stream for the creation of power, which rights so claimed by him are set forth in a deed from him to J. R. Miller, trustee, which has been duly recorded and is to be read as a part of the petition, that Miller, trustee, and those claiming under and through him assert that their rights as set out in the deed from Caldwell to Miller, trustee, have priority over some of the rights owned by petitioner; that petitioner has made an honest and *bona fide* effort to agree with Miller, trustee, and Caldwell, as agent for all parties interested, upon the price and terms to purchase their rights, but they have been unable to agree because they refuse to sell their rights or to allow the water to be diverted at a reasonable price; that under its charter and the general laws of the State petitioner is authorized to condemn lands or other property, or any interest or estate therein, for its uses and purposes, and that the property and rights owned by said Miller, trustee, which are sought to be condemned in this proceeding, and hereinabove set forth, are wanted for the uses and purposes of petitioner in constructing, maintaining and operating its proposed electric light plant; that petitioner intends to take by this proceeding 12 1-2 acres of land owned by Miller, trustee, hereinbefore mentioned and described, and shown on a map filed with the petition, and to take perpetual

right and privilege of diverting the waters of Big Reed Island Creek from their usual course, and utilize said water perpetually for its uses and purposes, free from the right or claim of all persons whomsoever; that it has given notice to all parties in interest of its intention to make this application at this term of court; and it, therefore, prays that five disinterested freeholders may be appointed, for the purpose of ascertaining a just compensation for the aforesaid property and property rights, which petitioner proposes to condemn, and to award the damages, if any, resulting to adjacent and other property owners from the construction and operation of petitioner's work.

The commissioners were appointed and made their report to the court, that in their opinion the sum of $250 would be a just compensation to the defendants. This sum was paid into court by the petitioner, all the exceptions on the part of the defendants to the report were overruled, and the report confirmed. To that order a writ of error was allowed by this court.

The act under which this proceeding was had is to be found in Acts of Assembly, 1906, at page 460, amending section 12 of an act to provide a charter for the town of Pulaski. Section 12, as amended, or so much thereof as is pertinent to the inquiry, is as follows:

"To establish, improve or enlarge water works and electric light works, or gas works, or to construct and equip and operate new electric light plants or water works, electric wires, poles, pipes, and other appurtenances to said plants within or without the corporate limits of said town for the purpose of supplying the inhabitants of said town, or other persons, companies or corporations with water, electric lights or power; to contract with the owners of any land, or water, or water rights, or other rights, for the use and purchase thereof, or to have the same condemned for the purposes aforesaid, whether situated within or without the corporate limits of the said town, for

the location, extension, enlargement, or improvement of said works, or for the construction of new works, the pipe lines, wires, or pole lines connected therewith, or any fixtures and appurtenances thereof * * * "

It is claimed on the part of plaintiff in error that the passage of this amendment to the charter of the town of Pulaski was forbidden to the legislature by the Constitution of the State, which in section 63 of article IV provides, that the General Assembly shall not enact any local, special, or private law in the classes of cases therein enumerated, none of which embrace the act in question.

By section 117 of article VIII of the Constitution, it is provided, that "General laws for the organization and government of cities and towns shall be enacted by the General Assembly, and no special act shall be passed in relation thereto, except in the manner provided in article IV of this Constitution, and then only by a recorded vote of two-thirds of the members elected to each house. But each of the cities and towns of the State having at the time of the adoption of this Constitution a municipal charter may retain the same, except so far as it shall be repealed or amended by the General Assembly; provided, that every such charter is hereby amended so as to conform to all the provisions, restrictions, limitations and powers set forth in this article, or otherwise provided in this Constitution."

It was held by this court in *Campbell* v. *Bryant,* 104 Va. 509, 52 S. E. 638, that "Since the adoption of the present Constitution, the legislature can, as formerly, grant charters creating cities and towns, but when such charters are granted the city or town so chartered must be organized and governed in accordance with the general laws. It cannot pass special laws conferring rights and privileges different from those prescribed by the general law, as this would be obnoxious to the constitutional provision forbidding special legislation."

The court in that case was dealing with the creation and

organization of a new town, and the charter was found to contain provisions which were prohibited by the constitution as well as by general law; and the decision especially leaves open the question as to what special acts may be passed in relation to cities and towns.

We are of opinion that it is within the power of the legislature to amend the charter of a municipal corporation if it pursues the mode provided in article IV of the Constitution, and the special act is passed by a recorded vote of two-thirds of the members elected to each house, as provided by section 117.

All the formalities prescribed by the Constitution appear by the journals of the House of Delegates and of the Senate to have been complied with, and that it was passed in the manner provided by article IV of the Constitution, and by a recorded vote of more than two-thirds of the members elected to each house. Indeed, plaintiffs in error do not undertake to point out specifically any defect or omission in the legislative procedure by which section 12 was adopted, but base their claim upon the broad proposition that the section in question is special legislation, which the legislature is without power to enact. In this view we cannot concur.

This brings us to a consideration of the act itself.

In *Fallsburg &c. Co.* v. *Alexander,* 101 Va. 98, 43 S. E. 194, 99 Am. St. Rep. 855, 61 L. R. A., 129, this court held, that private property cannot be taken for a private use, although there is no express inhibition in the Constitution to that effect; that the use which authorizes the legislature to grant to a corporation the power of eminent domain must be a public use, and that public use "must be one in which the public as such has an interest, and the terms and manner of its enjoyment must be within the control of the State, independent of the rights of the private owner of the property appropriated to the use. The use of property cannot be said to be public if it can be gainsaid, denied, or withdrawn by the owner. The public interest must dominate the private gain."

It is established in the jurisprudence of this State, that the question as to whether or not in a particular case there is a public use is one for the courts to determine. It is judicial and not legislative in its character. *Zircle* v. *Southern Ry. Co.,* 102 Va. 17, 45 S. E. 802, 102 Am. St. Rep. 805; *Fallsburg &c. Co.* v. *Alexander, supra;* Lewis on Eminent Domain, (2nd ed.), sec. 158, where it is said: "It is manifest that the legislature, in providing for the condemnation of private property, must determine in the first instance whether the use for which it is proposed to make the condemnation is a public one. But this determination is not final. All the courts, we believe, concur in holding that, whether a particular use is public or not, within the meaning of the Constitution, is a question for the judiciary." But it is well settled, "that when the uses are in fact public, the necessity or expediency of taking private property for such uses by the exercise of the power of eminent domain, the instrumentalities to be used and the extent to which such right shall be delegated, are questions appertaining to the political and legislative branches of the government." Lewis on Em. Dom., sec. 238.

But while the uses for which the power is granted must be public uses, it is not necessary that the entire community, or any considerable portion of it, should directly participate in the benefits to be derived from the property taken. "The public use required need not be the use or benefit of the whole public or State, or any large portion of it. It may be for the inhabitants of a small or restricted locality; but the use and benefit must be in common, not to particular individuals or estates." Lewis on Em. Dom., sec. 161.

We have no doubt that the power may be granted to a municipal corporation, to be exercised within or without its territorial limits, and that the power and duty to furnish light is a public use.

"The condemnation of property for public sewers, or works for the disposition of sewerage, for supplying a city or town

with water or gas, is so manifestly for public use that it has been seldom questioned and never denied." Lewis on Em. Dom., sec. 173.

We are of opinion, therefore, that if the act under concideration had been confined to the condemnation of property to enable the city to supply the inhabitants of the town of Pulaski with water, and electric lights, it would have been strictly for a public use, and that the necessity for its exercise and the extent to which it should be exercised, and that it was to be exercised beyond the territorial limits of the town, would all have been questions for the determination of the legislature, and would not be open to enquiry before the courts. *Zircle* v. *Southern Ry. Co., supra,* and cases there cited.

But this act goes much further. It confers the power upon the town to acquire the property rights in controversy here, not only for the purpose of supplying the inhabitants of the town, but "other persons, companies, or corporations," with electric lights or power. Now, if the grant of power had been to the town of Pulaski to condemn property for the sole purpose of furnishing power to persons, companies or corporations other than the inhabitants of the town itself, it clearly would not have been a public use, and would come within the condemnation of *Fallsburg &c. Co.* v. *Alexander, supra;* and the situation is not bettered by reason of the fact that the grant of power to condemn for the illegal purpose is coupled with the grant of power for a lawful purpose.

"If a private use is combined with a public use in such a way that the two cannot be separated, the whole act is void. Thus an act which authorized the erection of a dam across a navigable river by a city, either for the purpose of water works for the city, or for the purpose of leasing the water for private use, was held void." Lewis on Em. Dom., sec. 206.

The authority referred to in the text is *Attorney General* v. *Eau Claire,* 37 Wis. 400, where it is said: "The legisla-

ture may empower a city to establish water works for its use (that being a public and municipal purpose), and may also confer any legitimate power in aid thereof, such as the power to construct and maintain a dam, not obstructing the navigation of a public river or violating any other public or private right. But the maintenance of a dam for the purpose of leasing the water to private persons for private use is not a municipal or public purpose, for which a municipal corporation can be authorized to exercise the power of borrowing money and levying taxes."

The act held unconstitutional in the case just cited was amended, and came again before the Supreme Court of Wisconsin, in the case of *State of Wisconsin* v. *City of Eau Claire,* 40 Wis. 533, and the court, in passing upon it says: "We held in the former case, *Attorney General* v. *Eau Claire,* 37 Wis. 400, that the statute then before us, authorized the erection of a dam at public cost across a navigable river, either for the purpose of water-works for the city or for the purpose of leasing the water-power for private purposes; and that so the power was alternative and optional, either for a public or a private use, and therefore void. Since that decision, and obviously in view of it, the legislature has amended the statute; and the amendment so clearly and emphatically makes the power to construct the dam dependent on the power to construct water-works, and limits the power to lease the water-power to the excess not required for the water-works, as to place the power beyond criticism in that respect."

The act before us embraces an object which is constitutional and one which is unconstitutional, and they are so united as, in our judgment, to be inseparable. We cannot suppress the grant of the power to condemn for private purposes and maintain the act so far as it authorizes a condemnation for a public use, because we cannot undertake to say that the vote which the act as a whole received in the legislature, and which was

necessary to its passage under the Constitution—that is to say two-thirds of the members elected to each house—was not influenced by the fact that the statute carried with it authority to supply with electric power, not only the inhabitants of the town, but other persons, companies or corporations. To maintain such an act would be to establish a precedent capable of great abuse, if individuals and corporations, under cover of the public use, could, under such circumstances, avail themselves of the grant of power to a municipal corporation.

We are of opinion, for these reasons, that the act is unconstitutional, and that the judgment of the circuit court must be reversed.

*Reversed.*