Richmond.

TOWN OF NARROWS V. BOARD OF SUPERVISORS OF
GILES COUNTY, ET ALS.

November 18, 1920.

1. STREETS AND HIGHWAYS—*Taxation—Charter of the Town of Narrows—Constitutionality of Provision—Allowing Town to Collect Three-Fourths of the Road Tax.*—Section 27, of the charter of the town of Narrows (Acts 1914, p. 573), which provides that the town "shall have the right to collect three-fourths (¾) of all the road tax levied by the county on the inhabitants of Narrows," which shall be expended on the streets and roads within the town, is not unconstitutional as in violation of section 168 of the Constitution of 1902, as indirectly exempting the citizens of the town from the payment of county road taxes.

2. STREETS AND HIGHWAYS—*Taxation—Charter of the Town of Narrows—Constitutionality of Provision—Allowing Town to Collect Three-Fourths of the Road Tax.*—Neither the road law of the county of Giles (Acts 1908, p. 611), the charter of the town (Acts 1914, p. 573), nor any other statute, exempts the inhabitants of the town of Narrows or the property therein from the same rate of taxation as imposed on persons and property within the district and outside of the corporate limits. The charter appropriates to the streets and roads of the town three-fourths of the road taxes collected in the town, and the legislature had the power to make such an appropriation.

3. TAXATION—*Appropriation—Power of the Legislature.*—So long as the road taxes raised in the district are to be expended in the district, it is clearly within the province of the legislature to say when and how they shall be expended.

4. STREETS AND HIGHWAYS—*Taxation—Charter of the Town of Narrows—Constitutionality of Provision—Allowing Town to Collect Three-Fourths of the Road Tax.*—Upon the question of the constitutionality of the 27th section of the charter of the town of Narrows (Acts 1914, p. 573), it is immaterial that the town is not required by its charter to keep its streets in order, and that the residue of the district is not exempted from

any expenditure on the streets, as the other road funds of the district are wholly under the control and direction of the board of road commissioners of the district, under the special road law for the county, and no funds can be expended on the streets of the town of Narrows without the approval and direction of the board.

5. STREETS AND HIGHWAYS—*Taxation—Charter of the Town of Narrows.*—Section 26 of the charter of the town of Narrows (Acts 1914, p. 573) confers upon the town power of taxation for the purpose of "working and keeping of its streets, roads and bridges" in repair except county bridges. To this extent, but to this extent only, the town is constituted a separate district for road purposes. That is to say, the town may tax its inhabitants for improvements of its streets, in addition to the three-fourths of district road taxes, but cannot levy an additional road tax for any other purpose.

6. STREETS AND HIGHWAYS—*Separate Road Districts—Charter of the Town of Narrows.*—There is no doubt about the power of the legislature to create separate road districts of the magisterial districts of a county for local purposes. The provisions of section 27 of the charter of the town of Narrows (Acts 1914, p. 573) do not go as far as the legislature could lawfully have gone if it had made a separate road district of the town. The greater power, of course, includes the less. It is no objection to the charter that the town is not given the power to levy taxes to maintain *county bridges* that are or may be within the town. This is not a purely local affair, and the prohibition to levy taxes for county purposes does not affect the validity of the charter.

7. STREETS AND HIGHWAYS—*Separate Road Districts—Charter of the Town of Narrows.*—It is immaterial that under section 27 of the charter of the town of Narrows (Acts 1914, p. 573) that there may be streets or roads in the town which are not county roads, and upon which the town authorities might use some or all of the tax assigned to them. The same thing would have been true in greater degree if the legislature had gone the whole length of making a separate road district of the town.

8. STATUTES—*Title and Object—Charter of the Town of Narrows.*— The charter of the town of Narrows (Acts 1914, p. 573) entitled "An act to provide a charter for the town of Narrows, in Giles county, Virginia," does not violate section 52 of the Constitution of 1902, declaring that "no law shall embrace more than one object, which shall be expressed in its title." The

title is sufficient to include the provision for division of the road tax contained in section 27 of the charter.

9. STATUTES—*Title—Object—Amendment.*—While any act, regardless of its title, may not be treated as an amendment of a previous statute simply because it might have been enacted as such if the legislature saw fit to do so, in the instant case, the act of 1914, p. 573, entitled "An act to provide a new charter for the town of Narrows, Virginia, and to repeal all other acts or parts of acts in conflict therewith" is, in substance and effect, an act to amend the previous charter, although it does not in terms say so, and the title actually used is sufficient to cover amendments of the previous charter.

10. ACTS—*Title—Object—Act Incorporating a Town.*—The construction, maintenance, and repair of the streets and roads of a town, and the means of raising revenue to accomplish that end are plainly germane and have natural relation to, and congruity with, the incorporation of the town.

11. STATUTES—*Title—Object.*—Under section 52 of the Constitution of 1902, providing that "no law shall embrace more than one object, which shall be expressed in its title," the fact that many things of a diverse nature are authorized or required to be done in the body of the act, though not expressed in its title, is not objectionable, if what is authorized by the act is germane to the object expressed in the title, or has a legitimate and natural association therewith, or is congruous therewith, the title is sufficient.

12. STATUTES—*Title—Object.*—If there is doubt as to the sufficiency of the title of a statute under section 52 of the Constitution of 1902, the doubt must be resolved in favor of its sufficiency, as courts will not declare an act of the legislature unconstitutional unless it is plainly so.

13. STATUTES—*Title—Object — Acts Incorporating Municipalities.*— The title of a statute must not be made a cover for surreptitious or incongrous legislation, nor be such as to mislead the legislature or the people, but should fairly state the general subject covered by the body of the act. Subject to these limitations, the generality of the title is not a valid objection, and this observation is peculiarly applicable to acts incorporating municipalities. Such acts usually provide, not merely for the formation of the corporation, but also for its powers, legislative, judicial, police, and taxing, and for all the machinery necessary or usual for their effective exercise, and yet these are but parts of the whole, which is sufficiently expressed in the title declaring it to be an act to incorporate a designated community.

14. STATUTES—*Special Laws—Acts Incorporating Towns.*—Section
117 of the Constitution of 1902 does not forbid the enactment
of special acts for the organization and government of cities
and towns if they are passed in the manner provided in article
four of the Constitution, and by a recorded vote of two-thirds
of the members elected to each house, nor is it necessary that
such special acts should conform to the provisions of the gen-
eral law as to the incorporation of cities and towns.

15. STATUTES—*Special Laws—Acts Incorporating Towns.*—The main
differences between the charter of a town and the general law
as to municipal corporations related to the time for holding
the town elections, and the powers and jurisdiction conferred
upon the mayor and upon the council of the town. It was in-
sisted that these could not, under the Constitution, be different
from the provisions of the general law on the subject.

*Held:* That the right to create the differences mentioned was
within the legislative power, provided the charter was enacted
in the manner prescribed by article four of the Constitution
of 1902 and by the vote required by section 117 of the Con-
stitution.

16. STATUTES—*Special Laws—Acts Incorporating Towns—Showing
Compliance with Constitution.*—In the absence of evidence to
the contrary, the fact that the charter of a town was passed
in the manner and by the vote required by the Constitution
is sufficiently shown by the published act of incorporation.

17. JUDICIAL NOTICE—*Acts Incorporating Cities and Towns.*—Acts
incorporating municipalities are public acts, whether declared
to be so or not, and the courts will take judicial notice of
them.

18. STATUTES—*Enactment—Presumption of Compliance With Law.*
—When an act has been duly published by authority of the
State as a valid law, there is at least a *prima facie* presump-
tion that all requirements as to the validity of its enactment,
constitutional or otherwise, have been complied with.

19. STATUTES—*Enactment—Calling in Question Validity of Pub-
lished Act—Quaere.*—Whether or not the validity of an act
can be called in question after it has been duly enrolled, ap-
proved by the signatures of the presiding officers of the two
houses of legislature and of the Governor, and published by
authority of the State, is a question upon which there is
serious conflict of authority, and not being in question in the
instant case was not determined.

20. MUNICIPAL CORPORATIONS—*Annexation of Territory—New Char-
ter.*—Section 1 of the new charter of the town of Narrows
(Acts 1914, p. 573) taking in new territory and its inhabi-

tants, not included in the original charter of the town or its amendment of 1908, is in contravention of section 126 of the Constitution, which declares that the General Assembly shall provide by general laws for the extension and contraction of corporate limits, and that no special act for that purpose shall be valid. But as this part is readily separable from the residue of the charter, and such residue is complete in itself, and in no wise dependent upon the part to be stricken out, the residue of the charter is not void on account of the unconstitutional provision contained in section 1.

21. STATUTES—*Constitutional in Part, Unconstitutional in Part.*— Where a part of an act of assembly is unconstitutional, that fact alone does not authorize the courts to declare the other provisions of the act void, unless they are so connected in subject matter, depending on each other, operating for the same purpose, or otherwise so connected together in meaning that it cannot be presumed that the General Assembly would have enacted the one without the other, and, further, that if an act attempts to accomplish two or more objects, and is unconstitutional as to one, it may still be complete in all respects and valid as to the other, and, if so, the latter will be upheld.

Appeal from a decree of the Circuit Court of Giles county. Decree for defendant. Complainant appeals.

*Reversed.*

The opinion states the case.

*W. B. Snidow,* for the appellant.

*M. P. Farrier,* for the appellees.

BURKS, J., delivered the opinion of the court.

This suit was instituted in the Circuit Court of Giles county by the town of Narrows, for the purpose of having an accounting and a decree directing the treasurer of the county to pay to the complainant a certain portion of the

road taxes collected by him of the inhabitants of the town for certain years, and to enjoin him from paying out the amounts as collected by him to others, until the rights of the complainant had been settled and determined. There was a demurrer and answer by the defendants, but no evidence was offered. At the hearing the bill was dismissed, and from the decree dismissing the bill this appeal was taken.

The bill was dismissed because the judge of the trial court was of opinion that section 27 of the act of March 27, 1914, entitled "An act to provide a new charter for the town of Narrows," etc. (Acts 1914, p. 573), was in violation of section 168 of the Constitution, in that it undertakes indirectly to exempt the citizens of the town of Narrows from the payment of county road taxes. Other constitutional objections were also raised to the charter of said town, which we are asked to consider in the event we do not concur in the opinion of the trial court that the charter violates section 168 of the Constitution.

[1-6] Section 27 of the charter referred to is as follows: "The said town of Narrows shall have the right to collect three-fourths (¾) of all road tax levied by the county on the inhabitants of Narrows. Said amount shall be expended within the limits of the corporation on the streets and roads therein under the direction and supervision of said council." The town of Narrows is situated in Giles county, and no other provision of the charter relates to road taxes levied by Giles county, or any magisterial district thereof, nor is the town required to keep its streets in order free of expense to the county or the district in which the town is located. The county of Giles has a special road law of its own. Acts 1908, p. 611. Under this law each magisterial district of the county is made a separate road district, and a separate taxing district for road purposes. Section 12 of that act, as amended, is as follows: "For the purpose

73

of opening, changing and working and keeping in repair, the roads of Giles ·county and for the purpose of building or repairing the bridges and footways in said county, it shall be the duty of the board of supervisors of said county to levy an annual tax, not exceeding fifty cents on the one hundred dollars worth of all taxable property in said county, both real and personal. The amount from each magisterial district shall be kept separate, and shall be known as the district road fund, twenty per centum of which to be annually expended in macadamizing and making other permanent improvements thereon in such a manner and at such points as the commission for the several districts may think fit." Acts 1916, p. 206. There does not appear to be any separate county road tax, but the road taxes in the several districts are kept separate, and provision is made as to the payment of the expenses of building and maintaining roads which lie in two or more districts. The town of Narrows lies in and constitutes a part of the Pearisburg magisterial district, and the inhabitants of the town of Narrows are subject to the same road taxes as persons living in said district, but outside of the corporate limits of the town. Neither the road law of the county, the charter of the town, nor any other statute, exempts the inhabitants of the town or the property therein from the same rate of taxation as imposed on persons and property within the district and outside of the corporate limits, nor is such exemption claimed by the inhabitants of the town themselves or their property. What is done by the charter is an appropriation to the streets and roads of the town of three-fourths of the road taxes collected in the town, and the only question is whether the legislature had the power to make such an appropriation. There is no exemption from the tax. This has to be paid at all events. But after it has been paid and is in the hands of the treasurer, has the legislature the power to direct its appropriation? We know of no inhibi-

tion on this power. Legislation of this character is not infrequent, in section 12 of the road law, above quoted, we find an instance of it. It is there provided that twenty *per cent.* of the road tax of the district shall be expended in macadamizing and making other permanent improvements on the roads in the district. So long as the taxes raised in a district are to be expended in the district, it is clearly within the province of the legislature to say when and how it shall be expended. The fact that the town is not required by its charter to keep its streets in order and that the residue of the district is not exempted from any expenditure on said streets is immaterial in this case, as the other road funds of the district are wholly under the control and direction of the board of road commissioners of the district, under the special road law for the county, and not one cent thereof can be expended on such streets without the approval and direction of said board. The three-fourths of the road tax set apart to the town by its charter is required to be expended on its streets and roads, and if this is not sufficient for the purpose, it has no right to require the board of road commissioners for the district to pay any more as they are vested with discretion as to how the funds under their control are to be expended, and this discretion is not subject to control. Section 26 of the charter confers upon the town a further power of taxation for the purpose of "working and keeping of its streets, roads and bridges" in repair except county bridges. To this extent, but to this extent only, the town is constituted a separate district for road purposes. That is to say, the town may tax its inhabitants for improvements of its streets, in addition to the three-fourths of district road taxes, but cannot levy an additional road tax for any other purpose.

[7] The inhabitants of the town of Narrows are subject to all the county and district road taxes to which inhabitants of the county or district outside of the town are sub-

ject, and there is no doubt about the power of the legislature to create separate road districts of the magisterial districts of the county for local purposes. *Watkins* v. *Barrow,* 121 Va. 236, 92 S. E. 908. The provisions of section 27 of the charter do not go as far as the legislature would lawfully have gone if it had made a separate road district of the town. The greater power of course includes the less. It is no objection to the charter that the town is not given the power to levy taxes to maintain *county bridges* that are or may be within the town. This is not a purely local affair, and the prohibition to levy taxes for county purposes does not affect the validity of the charter.

Nor, in our opinion, is it material that there may be streets or roads in the town which are not county roads, and upon which the town authorities might use some or all of the tax thus assigned to them. The same thing would have been true in greater degree if the legislature had gone the whole length of making a separate road district of the town. In the latter event, the county would have been deprived of any and all road taxes collected from the inhabitants of the town, and yet would have had no power or control over the application of such road taxes as might be collected by the municipal authorities.

We are of opinion, therefore, that section 27 of the charter of the town of Narrows is not in conflict with section 168 of the Constitution on the subject of uniform taxation. The section does not create any exemption from road taxation by either the county or the district, but does make an appropriation of part of the road taxes collected within the town, and this is within the legislative power.

[8-10] Another objection made to the charter of the town is that the new charter created by the act of March 27, 1914, violates section 52 of the Constitution of the State, declaring that "no law shall embrace more than one object, which shall be expressed in its title." The original charter of the

town was granted by an act of assembly approved March 14, 1904, entitled, "An act to provide a charter for the town of Narrows, in Giles county, Virginia." Acts 1904, p. 256. This charter was amended by an act approved March 13, 1908, entitled, "An act to amend and re-enact an act approved March 14, 1904, entitled an act to provide a charter for the town of Narrows, in Giles county, Virginia." Acts 1908, p. 543. Next came the act of March 27, 1914, now complained of, entitled, "An act to provide a new charter for the town of Narrows, Virginia, and to repeal all other acts or parts of acts in conflict therewith." Acts 1914, p. 573. This last act makes no reference in its title to the preceding acts except by the use of the word "new"; but the use of that word indicates that there was a previous charter, and an examination of the act and a comparison of its provisions with those of the previous charter, as amended, discloses the fact that the act of 1914 is, in substance and effect, an amendment of the previous charter. It contains nothing that might not have been embraced in an act simply amending the former charter under a title similar to the amendment of 1908. It may be treated, therefore, as if enacted under a title similar to the 1908 amendment. It would seem that the new charter must be treated as an amendment of the old, for if cities could take in new territory by simply obtaining a "new charter," it would furnish an easy method for evading section 126 of the Constitution, which declares that "The General Assembly shall provide by general laws for the extension and the contraction, from time to time, of the corporate limits of cities and towns; and no special act for that purpose shall be valid." Clearly, the Constitution cannot be thus evaded. We do not mean to intimate that any act, regardless of its title, may be treated as an amendment of a previous statute simply because it might have been enacted as such amendment if the legislature saw fit to do so, but that in this case the title of the

act of 1914 is, in substance and effect, an act to amend the previous charter, although it does not in terms say so, and that the title actually used is sufficient to cover amendments of the previous charter. But even if we are mistaken in this view, the title of the act of 1914 is as comprehensive and as explicit as that of the act of 1904, and if one is good both are. They are substantially the same. If the title of the 1904 act is sufficient, the title of the amendatory act of 1908 is also sufficient to cover everything that might have been covered by the original act, however defective the title of the amendatory act may otherwise have been. *Commonwealth* v. *Brown,* 91 Va. 762, 21 S. E. 357, 28 L. R. A. 110. The title of the original act and also of the 1914 act are so manifestly sufficient to cover the provisions of the body of the act, including of course the provision for division of the road tax, that no extended consideration of the subject is deemed necessary. The construction, maintenance and repair of the streets and roads of a town, and the means of raising revenue to accomplish that end are plainly germane and have natural relation to, and congruity with, the incorporation of the town, and hence the provision that fifty per cent. under the original act, and seventy-five per cent. under the other acts, of the road taxes on the persons and property of the town shall be paid to the town for the improvement of its streets and roads is clearly within the title of those acts.

[11-13] The constitutional provision was never intended to hamper honest legislation, nor to require that the title should be an index or digest of the various provisions of the act, and it is rare that the generality of the title is a valid objection thereto. The fact that many things of a diverse nature are authorized or required to be done in the body of the act, though not expressed in its title is not objectionable, if what is authorized by the act is germane to the object expressed in the title, or has a legitimate and natural

association therewith, or is congruous therewith, the title is sufficient. This subject is fully discussed by Judge Riely in *Commonwealth* v. *Brown,* 91 Va. 762, 21 S. E. 357, 28 L. R. A. 110. See also, *Ingles* v. *Straus,* 91 Va. 209, 21 S. E. 490; *Commonwealth* v. *Willcox,* 111 Va. 849, 69 S. E. 1027; *Commonwealth* v. *Chesapeake & Ohio Ry. Co.,* 118 Va. 261, 87 S. E. 622; *Cochran* v. *Commonwealth,* 122 Va. 801, 94 S. E. 329; *Lucchesi* v. *Commonwealth,* 122 Va. 872, 94 S. E. 925, and cases cited. Furthermore, if there is doubt as to the sufficiency of the title, the doubt must be resolved in favor of its sufficiency, as courts will not declare an act of the legislature unconstitutional unless it is plainly so. *City of Roanoke* v. *Elliott,* 123 Va. 393, 96 S. E. 819, and cases cited. Of course the title must not be made a cover for surreptitious or incongruous legislation, nor be such as to mislead the legislature or the people, but should fairly state the general subject covered by the body of the act. *Powell* v. *Supervisors,* 88 Va. 707, 14 S. E. 543. Subject to these limitations, the generality of the title is not a valid objection. The foregoing observations are peculiarly applicable to acts incorporating municipalities. Such acts usually provide not merely for the formation of the corporation, but also for its powers, legislative, judicial, police and taxing, and for all the machinery necessary or usual for their effective exercise, and yet these are but parts of the whole which is sufficiently expressed in the title declaring it to be an act to incorporate a designated community. *Crookston* v. *Board of County Commissioners,* 79 Minn. 283, 82 N. W. 586, 79 Am. St. Rep. 453, is quite similar in some of its features to the case in judgment, and it is there well said: "We have repeatedly considered the constitutional provision relied on, and nothing of value can be added to the cases found in our reports upon this particular subject. The title of the act clearly expresses its subject, which is a consolidated and amended charter for the plaintiff city, and in the

act we should naturally expect to find such provisions as might be necessary for the proper government of the municipality. Among the most important of these expected provisions would be one relating to taxation, and no single provision of a charter could be more germane to its subject, as expressed in the title, than the one relating to the finances of the city." In the case in judgment, the provision assailed relates to both the finances and the streets of the town incorporated, and is clearly within the title of the act incorporating the town.

[14, 15] Another objection to the charter is that it is a special or local law, and is therefore in conflict with section 117 of the Constitution, which declares that, "General laws for the organization and government of cities and towns shall be enacted by the General Assembly, and no special act shall be passed in relation thereto, except in the manner provided in Article IV of this Constitution, and then only by a recorded vote of two-thirds of the members elected to each house." Such a general law has been enacted, and it is earnestly insisted that all special acts must conform thereto and cannot vary therefrom, and *Campbell* v. *Bryant*, 104 Va. 509, 52 S. E. 638, is vouched and relied on as authority for this position. Section 117 of the Constitution does not forbid the enactment of special acts if they are passed in the manner provided in Article IV of the Constitution, and by a recorded vote of two-thirds of the members elected to each house, nor is it necessary that such special act should conform to the provisions of the general law. The kindred provision in the antecedent Virginia Constitution (Art. VI, sec. 20) was as follows: "General laws shall be passed for the organization and government of cities, and no special act shall be passed, except in cases where, in the judgment of the general assembly, the object of such act cannot be attained by general laws." Neither the former nor the present constitutional provision on the subject prohibits the

passage of special acts affecting the organization and government of cities and towns, and they differ in that respect merely as to the manner in which such acts may be passed. The Constitution of 1902 undertakes to provide against hasty and ill-advised legislation of this kind by substituting for the "judgment of the general assembly," which might have been expressed by a bare majority vote, the reference to a special committee, and other requirements found in Art. IV of that instrument, and, in addition thereto, "a recorded vote of two-thirds of the members elected to each house." In *Miller* v. *Pulaski*, 109 Va. 137, 63 S. E. 880, 22 L. R. A. (N. S.) 552, Judge Keith, speaking for the whole court, after quoting from *Campbell* v. *Bryant, supra,* says: "The court in that case was dealing with the creation and organization of a new town, and the charter was found to contain provisions which were prohibited by the Constitution as well as by the general law; and the decision especially leaves open the question as to what special acts may be passed in relation to cities and towns." In the further consideration of the case then before the court, Judge Keith says: "All the formalities prescribed by the Constitution appear by the journals of the House of Delegates and of the Senate to have been complied with, and that it was passed in the manner provided by Article IV of the Constitution, and by a recorded vote of more than two-thirds of the members elected to each house. Indeed, plaintiffs in error do not undertake to point out specifically any defect or omission in the legislative procedure by which section twelve was adopted, but base their claim upon the broad proposition that the section in question is special legislation, which the legislature is without power to enact. In this view we cannot concur." The main differences between the charter of the town of Narrows and the general law relate to the time for holding the town elections, and the powers and jurisdiction conferred upon the mayor and upon the council of the

town. It is insisted that these cannot, under the Constitution, be different from the provisions of the general law on the subject. The right to create the differences mentioned was within the legislative power provided the charter was enacted in the manner prescribed by Article IV of the Constitution and by the vote required by section 117. *Miller* v. *Pulaski, supra.*

[16, 17] It is insisted, however, that it was incumbent on the town to show affirmatively that its charter was passed in the manner and by the vote required by the Constitution. In the absence of evidence to the contrary, this was sufficiently shown by the published act of incorporation. Acts incorporating municipalities are public acts, whether declared to be so or not, and the courts will take judicial notice of them. *Beasley* v. *Beckley,* 28 W. Va. 81; *Arndt* v. *Cullman,* 132 Ala. 540, 31 So. 478, 90 Am. St. Rep. 922; cases cited, note 2, 15 R. C. L. 1116.

[18, 19] When an act has been duly published by authority of the State as a valid law, there is at least a *prima facie* presumption that all requirements as to the validity of its enactment, constitutional or otherwise, have been complied with. Whether or not the validity of an act can be called in question after it has been duly enrolled, approved by the signature of the presiding officers of the two houses of legislature and of the Governor, and published by authority of the State, is a question upon which there is serious conflict of authority, with the weight of authority probably holding the negative. The line of cases holds that an act so enrolled, authenticated and approved imports absolute verity and is conclusive that all constitutional requirements have been complied with, and the other that while there is a strong *prima facie* presumption that the act was regularly and duly passed, the presumption may be overcome by resort to the legislative journals. In *Wayt* v. *Glasgow,* 106 Va. 110, 120, 55 S. E. 536, there are expressions

in the opinion of this court indicating that the journals might be consulted to show that such an act had not been passed by the vote required by the Constitution, but such holding was not necessary to the decision of the case, and the journals were excluded on other grounds, and as the question is not here involved, we express no opinion on the subject. The subject is discussed and the cases cited in 51 Am. Dec. 617-619; 25 R. C. L., secs. 146-155; 1 Greenleaf Ev. (16th ed.), sec. 482; Wigmore Ev., 1350, and notes.

The Supreme Court of the United States applies the rule of conclusiveness of the act as applied to acts of Congress and territorial statutes, but as to State statutes applies the rule prevailing in the State from which the case comes. *Field* v. *Clark,* 143 U. S. 649, 12 Sup. Ct. 495, 36 L. Ed. 294; *Lyons* v. *Woods,* 153 U. S. 649, 14 Sup. Ct. 959, 38 L. Ed. 854; *Harwood* v. *Wentworth,* 162 U. S. 547, 16 Sup. Ct. 890, 40 L. Ed. 1069; *Flint* v. *Stone Tracy & Co.,* 220 U. S. 107, 143, 31 Sup. Ct. 342, 55 L. Ed. 389, Ann. Cas. 1912B, 1312; *South Ottawa* v. *Perkins,* 94 U. S. 260, 24 L. Ed. 154; *Post* v. *Supervisors,* 105 U. S. 667, 26 L. Ed. 1204.

In the course of the opinion in *Lyons* v. *Woods, supra,* it is said by the Chief Justice, speaking for the court, that "the question whether a seeming act of a legislature has become a law in accordance with the fundamental law is a judicial one to be tested by the courts and judges, and not a question of fact to be tried by a jury." The same view is expressed in other cases cited above.

All of the cases hold that such evidence of enactment is at least *prima facie* evidence of regular and due enactment, and hence it is not necessary for us to pass on the question in the present case.

[20, 21] Section one of the new charter (1914) takes in new territory and its inhabitants, not included in the original charter or the amendment of 1908. This provision is assailed as in contravention of section 126 of the Constitu-

tion hereinbefore quoted. For the reason stated in another connection, we are of opinion that so much of section one as embraces the new territory and the inhabitants thereof is plainly in violation of section 126 of the Constitution and is therefore null and void. But we are further of opinion that this part of section one is readily separable from the residue of the charter, and that such residue is complete in itself, and in no wise dependent upon the part to be stricken out. In *Robertson* v. *Preston,* 97 Va. 296, 33 S. E. 618, it was held that where a part of an act of assembly is unconstitutional, that fact alone does not authorize the courts to declare the other provisions of the act void, unless they are so connected in subject matter, depending on each other, operating for the same purpose, or otherwise so connected together in meaning that it cannot be presumed that the general assembly would have enacted the one without the other, and, further, that if an act attempts to accomplish two or more objects, and is unconstitutional as to one, it may still be complete in all respects and valid as to the other, and if so the latter will be upheld. To the same effect, see *Trimble* v. *Commonwealth,* 96 Va. 818, 32 S. E. 786; *Cahoon* v. *Iron Gate,* 92 Va. 367, 23 S. E. 767; *Bertram* v. *Commonwealth,* 108 Va. 902, 62 S. E. 969, and cases cited. The residue of the charter of the town of Narrows is not void on account of the unconstitutional provision contained in section one. No vote was necessary or taken as to the acceptance of the charter, and the invalid provision was clearly a separable and independent provision.

As to the district road tax provided by Acts 1916, Ch. 382, pp. 655, 659, on intangible property, the town of Narrows is entitled to the three-fourths given by its charter. This tax is imposed as a district road tax, and the town is a part of the Pearisburg magisterial district for which the tax is imposed. If it maintained its own roads, the tax

could not be levied on its inhabitants as a part of the district, but the town, as a town, could levy a tax of thirty cents on the hundred dollars on the intangible and take the whole of it, but it is asserting no such claim here and admits that it is part of the Pearisburg district and as such is liable to the district tax. This admission is beneficial, rather than prejudicial, to the district.

There may be other provisions of the charter, not affecting the validity of the whole, which are objectionable, but we have disposed of all that were insisted on in the record before us.

It appears from the bill that ever since the town was first incorporated the county treasurer, in recognition of the charter provisions which he now assails, has annually paid to the town sums of $150 or $200 for each year on account of road taxes collected by him from the local inhabitants, and that the present controversy arose after, and largely on account of, the collection by him, recently, of a substantial amount of omitted taxes from the Union Tanning Company, an extensive manufacturing enterprise located within the corporate limits. The treasurer and the board of supervisors in their answer insist that the receipt of these annual payments by the town estops it from claiming any further part of the taxes for past years. No evidence was taken in the trial court, but the bill was dismissed on demurrer, hence the question of estoppel was not submitted to this court.

For the reasons hereinbefore given, the decree of the Circuit Court of Giles county will be reversed, and the cause remanded with directions to overrule the demurrer of the defendants to the complainant's bill, and to order the enquiries prayed for in said bill and grant to the complainant such relief as it may be entitled to in accordance with the foregoing opinion.

*Reversed.*

PRENTIS, J., *dissenting*.

The question involved in this case is of far-reaching importance. I feel that the majority opinion fails to accord due weight to some established fundamental doctrines with reference to taxation, and therefore I feel that it is my duty to dissent from its conclusions.

I shall not attempt to express my views fully, but shall content myself with saying that, in my opinion, section 126 of the Constitution makes the act invalid, because it prohibits the enlargement of the limits of a town by special act. I also think that the act violates the uniformity clause, in that it segregates a portion of the tax collected from the entire taxing district, and directs that such portion be expended for the benefit of a particular portion of such district. It is not simply an appropriation for a particular purpose, such as for building a school house, or a bridge, for the benefit of the whole district, but it is a segregation of a portion of the annual tax which is levied for the benefit of the entire district, which by mandate of the legislature is to be expended perpetually, or until the legislature chooses to amend the law, for the benefit of a specified portion of the district. I think that the uniformity clause not only means that the tax burden must be uniform upon the same class, but that the benefits from the expenditure shall be uniform also. The act also directs the fund to be expended upon the streets of the town of Narrows, and certainly if some of those streets are not county roads, these district road funds cannot be lawfully appropriated for the improvement of streets of the town which are not county highways. I do not think that these objections are answered by saying that the legislature might have made the town of Narrows a separate taxing district, because the fact is that it has not made it such a separate taxing district for public roads. The district is not relieved of its obligation to keep the pub-

lic roads in order, both within and without the town of Narrows, and yet a portion of the taxes raised for that general purpose is required to be expended entirely within the town.

SIMS, J., *dissenting*:

The town of Narrows was not in existence when the Constitution of 1902 went into effect.

Section 117 of the Constitution of 1902, so far as material to this case, provides as follows: "General laws for the organization and government of cities and towns shall be enacted by the general assembly, and no special act shall be passed in relation thereto, except in the manner provided in article four of this Constitution, and then only by a recorded vote of two-thirds of the members elected to each house. * * *"

The object of this constitutional provision was to relieve the legislature from the burden of granting charters and legislating by special acts for municipalities in future and to secure uniformity of municipal government in the State, certainly as to municipal corporations thereafter coming into being, by requiring that they should be organized and governed in accordance with general laws.

Accordingly the General Assembly has provided by general laws for the creation of municipal corporations of cities by certain court proceedings (Pollard's Code, sec. 1013-b; 3 Pollard's Code, p. 644 et seq.). It has not as yet relieved the legislature of the burden of granting charters for the creation of towns; but it has amply provided by general laws for the government of all towns, except perhaps in regard to some matters with respect to which some town or towns may be peculiarly or differently situated from other towns of the State.

There is an important difference between the language of the previous Constitution on this subject and the language of said section 117. Section 20 of Art. VI of the Constitution of 1869 contained the following provision: "General laws shall be passed for the organization and government of cities, and no special act shall be passed, except in cases where, *in the judgment of the general assembly,* the object of such act cannot be attained by general laws." (Italics supplied.) As a part of the history of the subject, it is well known that this constitutional submission *to the judgment of the general assembly* of the question of whether the object of such legislation could be attained by general laws, in practice rendered the foregoing provision as to the enactment of such general laws as to cities nugatory. The Constitution of 1902, sec. 117, aforesaid, omitted the language permitting special acts to be passed "in cases where, in the judgment of the general assembly the object of such act cannot be attained by general laws," (also added "towns" to the provision of the Constitution), and thereby withdrew from the legislature the discretion of providing, in the exercise of its judgment aforesaid, for the organization and government of cities *and towns* in a manner different from the provisions of the general law, and substituted the constitutional provision for the legislative discretion, *i. e.,* made a positive constitutional requirement which is, in effect, not only that general laws on the subject should be enacted, but that such laws when enacted should govern the subject, *the judgment of the general assembly* to the contrary notwithstanding. The construction of this constitutional provision and the application of this test, as of all other constitutional limitations on the legislative power, is the function of the courts, not of the legislature. When general laws have in fact been enacted on the subject and they are ample for the practical accomplishment of the organization and government of a particular town in ques-

tion in conformity with the organization and government of other towns in the State alike situated, the very existence of such general laws demonstrates that every legitimate object of such municipal organization and government can be attained by such laws. Such is the case before us.

When general laws have not been enacted, and a particular special law is passed on the subject, whether the powers it may confer can be exercised by the particular municipality which claims the benefit of it will depend, when the constitutional test aforesaid is applied, upon whether such municipality is situated so differently with respect to the subject of such special act that it is in a class by itself so that its exercise of such powers will not result in lack of uniformity of its organization and government when compared with other municipalities of the State alike situated. And this test is to be applied as aforesaid by the courts to the facts of the particular case. Such, however, is not the case before us.

Now, in this situation of the law, there are two views which may be taken of the meaning of the latter portion of section 117 of the Constitution above quoted, which section is as follows: "* * * no special act shall be passed in relation thereto, except in the manner provided in Article IV of this Constitution, and then only by a recorded vote of two-thirds of the members elected to each house."

One view of the subject is that after the Constitution went into effect cities and towns thereafter created can be organized and governed only in accordance with general laws, which have been enacted therefor. That charters may be granted by the legislature creating cities and towns, and acts may be passed amending such charters, provided the special acts therefor be passed in the manner provided in Article IV of the Constitution and by the two-thirds recorded vote aforesaid, but when such charters are granted, or amended, the city or town must be organized and gov-

75

erned in accordance with general laws. This view regards the language of the Constitution last quoted as having reference only to the manner in which all of such special acts must be passed, and interprets such language to mean, when read in connection with the preceding language of the section of the Constitution under consideration, that it is not intended thereby to authorize the legislature by any special act, however passed, to nullify the requirement that all cities and towns thereafter created must be organized and governed, so far as it is practical so to do, in accordance with the general laws enacted therefor. This view of the law gives effect to the manifest purpose of the Constitution. It prevents the nullification of the constitutional provision by the exercise of legislative *judgment* and discretion in the matter, which, as we know, was the result of the former constitutional provision concerning cities, which has been left out of the Constitution of 1902. It accords to such provision the vitality which is essential to enable it to accomplish the important reform in the direction of uniformity of municipal government which is its chief object.

Another view of the subject is that since the language last quoted permits special acts to be passed in a certain manner, if they are passed in that manner there is no constitutional limitation on the character of such legislation, and that the legislature may by such acts confer any special power it may choose upon municipalities created after the Constitution went into effect, with respect to municipal organization and government, however diverse and out of accord. This view of the subject gives no effect to the language of the first part of the section of the Constitution under consideration. It gives to the subsequent provisions quoted the effect of nullifying the limitation contained in the preceding portion of the same sentence and provides an easy method for the legislature to thwart the aforesaid constitutional purpose. For, as we know, special acts con-

cerning cities and towns, are passed as a rule by the vote of members of the legislature without scrutiny or consideration except by the representative of the particular locality affected. And it gives the same meaning to the constitutional provision under consideration (which leaves out the former constitutional provision of submission of the subject to the legislative *judgment,* or discretion, as aforesaid), as attached to the former Constitution, and which did in fact prevent the accomplishment of uniformity in city organization and government under the old Constitution, and would unquestionably have the same result upon the accomplishment of uniformity in the city and town organization and government under the new Constitution.

On principle, and in accordance with the settled canons of construction of all writings, I think that the former is the correct view to be taken, and that such is the proper construction of the section of the Constitution of 1902 aforesaid.

And upon authority, we find that in *Campbell* v. *Bryant,* 104 Va. 509, at p. 513, 52 S. E. 638, this court held: "* * * it is clear that cities and towns not in existence when the Constitution went into effect can only be organized and governed in accordance with general laws. This provision of our present fundamental law" (referring to sec. 117 of the Constitution of 1902) "prohibiting special legislation, and providing that general laws for the organization of cities and towns shall be enacted, and that no special act shall be passed in relation thereto, is second to no other provision of the Constitution in value and importance, and cannot be too carefully observed or strictly enforced.

"Of course the legislature can, as formerly, grant charters creating cities and towns, but when such charters are granted the city or town so chartered must be organized and governed in accordance with the general laws, other-

wise the charter would be obnoxious to the constitutional provision forbidding special legislation."

The case of *Miller* v. *Pulaski,* 109 Va. 137, 63 S. E. 880, 22 L. R. A. (N. S.) 552, does not overrule the holding in *Campbell* v. *Bryant* with respect to cities and towns not in existence when the Constitution of 1902 went into effect. There are expressions in the opinion in the former case which on the face of them may seem somewhat in conflict with the holding in the latter case; but the *Miller* v. *Pulaski Case* involved an amendment by special act of the charter of the town of Pulaski which was in existence prior to the said Constitution, and that case in truth merely holds that, "it is within the power of the legislature" (by special act) "to amend the charter of a municipal corporation if it pursues the mode provided in Article IV of the Constitution and the special act is passed by a recorded vote of two-thirds of the members elected to each house, as provided by section 117." The opinion does not discuss or enter at all into any consideration of the character of legislation which, under section 117 of the Constitution, may be so enacted by special act. The special act which was there under consideration attempted to give the town of Pulaski the power of condemnation for a private as well as a public use, the two being so combined that they could not be separated, so that the case was the same as if such power had been attempted to be conferred for a private use only. On this ground the legislation was held to be invalid. Hence, the court did not pass upon what character of legislation may be enacted by special act in amendment of a municipal charter, under section 117 of the Constitution. So that it seems to me the authority of *Campbell* v. *Bryant* remains unaffected and unimpaired in its holding aforesaid, certainly with respect to municipalities created since the Constitution of 1902 went into effect.

All three of the acts drawn in question in this case are admittedly special acts.

There are in the charter of the town of Narrows provisions relating to the time for holding the town elections, and attempting to confer certain powers and jurisdiction upon the mayor and upon the council of the town which are absolutely inconsistent and in conflict with the provisions of the general laws which have been enacted by the legislature for the organization and government of towns.

There is also a provision in all three of the charters, attempting to authorize the town of Narrows to take out of the county treasury a certain per cent. of all the road tax levied by the county on the inhabitants of the town and expend such tax within the limits of the town on its streets and roads under the supervision of the town council, which is likewise absolutely inconsistent and in conflict with the provisions of the general laws aforesaid.

Section 27 of the act approved March 27, 1914 (Acts 1914, p. 573), entitled "An act to provide a new charter for the town of Narrows, Virginia," contained the following provisions:

"The said town of Narrows shall have the right to collect three-fourths (¾) of all the road tax levied by the county on the inhabitants of Narrows. Said amount shall be expended within the limits of the corporation on the streets and roads therein under the direction and supervision of said council."

Section 6 of the act of 1904 (Acts 1904, p. 256), which first incorporated the town of Narrows, contained in substance the same provision except that the proportion of the road taxes mentioned which it provided that the town should have the right to "collect" was "one-half."

Section 6 of the act of 1908 (Acts 1908, p. 543), entitled "An act to amend and re-enact an act approved March 14, 1904, entitled an act to provide a charter for the town of Narrows, in Giles county, Virginia," contained, in substance the same provision as the first above mentioned act of March 27, 1914.

None of these acts, nor any other, created the town of Narrows a separate road district or required it to keep its streets in order. Nor does it appear in the record that the town of Narrows in fact undertook to maintain its own streets so as to relieve the county of that burden. On the contrary, section 26 of the said act of March 27, 1914, expressly provides that any bridges which have been or may be hereafter built within the town by the county are to "be maintained and kept in good repair by the board of supervisors or other officials of Giles county having the same in charge."

No such power as that of "the right to collect" any part of "the road tax levied by the county" in which an incorporated town is located, whether such tax be a district or county road tax, has been conferred on the other towns of the State by general laws. And it is manifest that the town of Narrows is situated with regard to that source of town revenue in no way differently from the other towns of the State, the territories of which form parts of counties.

There is a general law (Pollard's Code 1904, sec. 944-a, clause 11, amended by act approved March 15, 1915 [Acts 1915, p. 121], which exempts from the "road tax" which the board of supervisors of each county may annually levy along with the county levy, property, real and personal, subject to local taxation which is "included within the corporate limits of any town in such county which maintains its own streets." Such general law has been properly upheld by this court as not in violation of section 168 of the State Constitution requiring uniformity of taxation, because it in effect creates separate road taxing districts of the towns which maintain their own streets. *Watkins* v. *Barrow*, 121 Va. 236, 92 S. E. 908, and cases therein cited. But the power attempted to be granted to the town of Narrows by the acts in question of the right to collect a part of the "road tax levied by the county" is not in accordance with

the general law just mentioned. If such power be regarded as the same thing, in effect, (as in truth it is), as exempting the real and personal property subject to local taxation which is included within the corporate limits of the town of Narrows from one-half or three-fourths of the road tax levied by the county, it would be so lacking in uniformity in its provisions as to be obnoxious to section 168 of the Constitution, since the town of Narrows, as we have seen, has not been created by law a separate road taxing district.

In any view we may take of the matter, it is plain that the provisions of the three acts under consideration are not in accord with the general law on the subject governing the towns of the State. They attempt to confer a peculiar power on the town of Narrows of collecting a portion of the road tax levied by the county in which it is located, as well as to levy a town tax, all of which revenue may be used for road and street purposes within the town—a power which, if enjoyed, would set such town apart as governed in that particular by special legislation not applicable to other towns of the State of like character and in precisely the same situation, thus making it specially favored by legislation. This would be in direct violation of section 117 of the Constitution as it is construed in *Campbell* v. *Bryant,* and, as I think, there correctly construed, as aforesaid.

For the reasons stated, and also for those stated in the dissenting opinion of Judge Prentis, in which I concur, I am of opinion to affirm the decree of the court below which is under review, and hence cannot concur in the majority opinion in the case.