## Staunton

### WILLIAM RAIFORD PIERCE v. SAMUEL J. DENNIS, ET AL.

September 11, 1964.

Record No. 5780.

Present, All the Justices.

*Douglas A. Clark*, for the appellant.

*John S. Davenport, III* (*Wilson E. Sheridan; LaRue Van Meter; Denny, Valentine & Davenport*, on brief), for the appellees.

CARRICO, J., delivered the opinion of the court.

This appeal challenges the constitutionality of § 20.14 of the charter of the city of Falls Church, which permits employees of the United States government to serve as officers of the city, contrary to the provisions of Code, § 2-27.

The question arose when William Railford Pierce, the complainant, a resident, voter and taxpayer of the city, filed a motion for declaratory judgment against Samuel J. Dennis, Thomas R. Jones, Lee Rhoads and Harold Silverstein, the defendants, all Federal employees and all members of the council of the city.

The bill alleged that the defendants were "ineligible and incapable" of holding office on the council because of the provisions of Code, § 2-27, and prayed that their offices, ". . . be declared vacant from the date that each defendant undertook to enter upon the duties of said office."

The defendants filed a joint answer, asserting their eligibility to hold office because of the provisions of § 20.14 of the city charter.

The court heard the evidence ore tenus and in a written opinion ruled that the disputed charter section was valid. A final decree denied the relief sought by the complainant and he was awarded an appeal.

Code, § 2-27 provides as follows:

"§ 2-27. *Holding Office under United States.*—No person shall be capable of holding any office or post mentioned in the preceding section [any office of honor, profit, or trust, under the Constitution of Virginia], who holds any office or post of profit, trust, or emolument, civil or military, legislative, executive, or judicial, under the government of the United States, or who is in the employment of such government, or who receives from it in any way any emolument whatever; and the acceptance of any such office, post, trust, or emolument, or the acceptance of any emolument whatever under such government, shall, ipso facto, vacate any office, or post of profit, trust or emolument under the government of this Commonwealth or under any county, city, or town thereof." [1]

The charter section in question reads as follows:

"§ 20.14. *United States Government Employees.*—No person, otherwise eligible, shall be disqualified, by reason of his accepting or holding an office, post, trust or emolument under the Government

---

[1] Code, § 2-29 sets forth certain exceptions to Code, § 2-27, none of which is pertinent here.

of the United States, from serving as an officer or employee of the city, nor as a member, officer, or employee of any board or commission, including the school board." (Acts of 1950, ch. 323, p. 501, at p. 586).

The complainant contends that § 20.14 of the city charter is a special act, at variance with and amendatory of Code, § 2-27; that such special legislation is forbidden by § 64 of the Constitution of Virginia;[2] that § 20.14 of the charter is, therefore, unconstitutional and, since it is, Code, § 2-27 is effective to disqualify the defendants from holding their offices.

The defendants, on the other hand, although conceding that § 20.14 of the charter is a special act, contend that it is valid legislation because it was enacted pursuant to § 117 of the Constitution which provides, so far as is pertinent here, as follows:

"§ 117. *General Assembly shall enact laws for government of cities and towns; how special act therefor passed; as to city charters existing at adoption of Constitution.*—(a) General laws for the organization and government of cities and towns, shall be enacted by the General Assembly, and no special act shall be passed in relation thereto, except in the manner provided in article four of this Constitution, and then only by a recorded vote of two-thirds of the members elected to each house . . . ."

The complainant, for answer to the defendants' argument concerning § 117 of the Constitution, asserts that § 20.14 of the city charter, "has nothing to do with the organization or government of cities."

The complainant does not question that the charter provision was adopted in the manner required by Article IV of the Constitution and by the vote required in § 117.

We are to determine, then, whether § 20.14 of the charter of the city of Falls Church is valid legislation, enacted for the organization and government of the city, so as to permit the defendants to escape the ban imposed by Code, § 2-27.

---

[2] "§ 64. *General Assembly shall enact general laws in cases mentioned in the preceding section, and wherever general laws will apply; amendment or partial repeal of general law shall not enact special tax; restrictions as to laws.*—In all cases enumerated in the last section [§ 63 sets forth twenty specific instances where special legislation is not permitted], and in every other case which, in its judgment, may be provided for by general laws, the General Assembly shall enact general laws. Any general law shall be subject to amendment or repeal, but the amendment or partial repeal thereof shall not operate directly or indirectly to enact, and shall not have the effect of the enactment of, a special, private, or local law. * * * "

The complainant relies heavily upon the case of *Dean* v. *Paolicelli*, 194 Va. 219, 72 S. E. 2d 506, to support his contention that the chancellor erred in his decision upholding the validity of § 20.14 of the city charter. In fact, complainant's reliance on the *Dean* case is so great that he says that an affirmance of the decree in this case would constitute a reversal of the *Dean* decision.

In the *Dean* case, we declared unconstitutional subsection 11 of Code, § 2-29, under which Dean, a Federal employee, sought to maintain his position as a member of the County Board of Arlington County. The subsection, though enacted under the guise of general legislation, was held to be special and thus repugnant to § 64 of the Constitution as an attempt to amend Code, § 2-27, a general statute, by a special act.

But the *Dean* case is not controlling of our decision here. The effect of § 117 of the Constitution, permitting special legislation for the organization and government of cities and towns, was not even considered in the *Dean* case. Its provisions were not an issue, and could not have been an issue, because that controversy involved a county, rather than a city, and a county is not embraced within the permissive provisions of § 117.

The real issue here, then, concerns the impact of §§ 64 and 117 one upon the other. Assuming for the moment that the charter provision in dispute is an act for the organization and government of the city, its validity cannot be questioned when it is viewed solely in the light cast by § 117. But does it lose its validity when it passes under the alleged cloud of § 64, the language of which, if considered alone, would just as clearly invalidate the act? What is the effect upon the legislation here involved of this apparent repugnancy between §§ 64 and 117?

We have not previously provided a direct answer to these questions, but the solution is to be found in a cardinal rule of constitutional construction and in a number of cases dealing with § 117, some of which also concern themselves with the interrelation of § 117 and § 63 of the Constitution.

The rule of construction was stated by Judge Burks in *City of Portsmouth* v. *Weiss*, 145 Va. 94, 106, 107, 133 S. E. 781, quoting from 66 R. C. L., p. 47, Sec. 41:

" 'In construing a constitutional provision it is the duty of the court to have recourse to the whole instrument, if necessary, to ascertain the true intention and meaning of any particular provision, and if there is an apparent repugnancy between different provisions the

court should harmonize them if possible. Frequently the meaning of one provision of the Constitution, standing by itself, may be obscured or uncertain, but is readily apparent when resort is had to other provisions of the same instrument. It is, therefore, an established canon of constitutional construction that no one provision of the Constitution is to be separated from all the others and to be considered alone, but that all the provisions bearing upon a particular subject are to be brought into view and to be so interpreted as to effectuate the great purpose of the instrument.' "

Section 63 of the Constitution, like § 64, forbids special legislation but sets forth specific fields to which its prohibition applies. None of the fields is applicable here, but the operation, scope and effect of the two sections are so similar that a decision concerning § 63 is helpful in a case in which a decision is sought, "to ascertain the true intention and meaning of" § 64 and to "harmonize" it, if possible, with § 117.

In *Miller* v. *Pulaski*, 109 Va. 137, 63 S. E. 880, an act of the legislature amended the charter of the town of Pulaski to give it the power of eminent domain to acquire "land, or water, or water rights" for, "water works and electric light works, or gas works." There was a broad attack upon the amendment on the ground that it was special legislation forbidden by § 63 of the Constitution. The court held that none of the classes enumerated in § 63 embraced the amendment in question and said that the legislature had the power to amend the charter of a municipal corporation if it pursued the mode provided in § 117.

In *Town of Narrows* v. *Giles County*, 128 Va. 572, 105 S. E. 82, the charter of the town was, in a number of respects, at variance with general law, especially in a provision giving the town the right to collect three-fourths of the road tax levied by the county upon town inhabitants. The objection to the charter was that it was a special act, not conforming to general law already enacted. The court upheld the power of the legislature, ". . . to create the differences mentioned . . . provided the charter was enacted in the manner provided by Article IV of the Constitution and by the vote required by § 117." 128 Va., at p. 586.

In *City of Portsmouth* v. *Weiss, supra,* a provision of the city's charter required notice of a negligence claim to be given the city within thirty days after injury. An injured party sought to escape his failure to give notice by attacking the charter provision as unconstitutional, asserting that it was special legislation, violative of

§ 63 (3) which prohibits special legislation, "Regulating the practice in, or the jurisdiction of, or changing the rules of evidence in any judicial proceedings or inquiry before the courts [or] other tribunals."

The charter provision was upheld by force of the authority of § 117 of the Constitution, the court stating:

". . . If section 63 of the Constitution, forbidding the passage of any local, special or private law regulating the practice in any judicial proceeding, is apparently in conflict with section 117, the conflict is more apparent than real. Section 63 must be held to apply to cases not otherwise specially provided for. It cannot be supposed that the convention intended to impose upon the legislature any other restraints in the enactment or amendment of charters of municipal corporations than those imposed by section 117. It was dealing with that specific subject, and threw around it all the safeguards it deemed necessary. If these were complied with, the power of the legislature in reference thereto was unrestrained. The language of section 63 is general, that of 117 is specific. The general must give way to the specific, and section 63 applied to cases not otherwise specifically provided. In this way the two sections are made to harmonize, and the apparent repugnancy is avoided." 145 Va., at pp. 107, 108.

*Fallon Florist* v. *City of Roanoke,* 190 Va. 564, 58 S. E. 2d 316, concerned the validity of certain taxes, imposed by the city pursuant to provisions of its charter. The taxes were assailed upon the ground that since no general law authorized their imposition, the charter provisions, being special legislation, were rendered unconstitutional by §§ 63 (5)[3] and 64.

Although there is no separate discussion in the opinion concerning the relationship of § 64 to § 117, the opinion states, "There is, we think, a complete answer to appellants' argument in section 117 (a) of the Constitution, as interpreted by the previous decisions of this court." The discussion which follows makes it crystal clear that the court was holding that when an act for the organization and government of a city or town is adopted in the manner prescribed by and pursuant to the authority of § 117, its validity is unassailable upon grounds of unconstitutionality either under § 63 or § 64.

---

[3] "The General Assembly shall not enact any local, special or private law in the following cases:

"5. For the assessment and collection of taxes . . . ."

In the case before us, the chancellor aptly defined the effect of the *Fallon* decision when he said in his able opinion:

". . . The *Fallon* decision leaves no doubt but that the General Assembly does have this power [to enact § 20.14 of the Falls Church city charter], and appears to have decided with finality that the state legislature is unrestrained in the enacting and amendment of municipal charters, except for those restraints imposed by section 117."

It will be observed, from a reading of the above cases, that the charter provisions involved were enacted either in a field where the general law was silent on the subject or where the provisions differed in some respect from the general law relating thereto. None of the cases involved an instance, similar to the situation before us, where the legislature granted a benefit or extended a power to a municipality in direct derogation of a general statute upon the subject. Our research has led us to just such a case.

In *Chambers* v. *City of Roanoke*, 114 Va. 766, 78 S. E. 407, an act of the General Assembly approved March 3, 1896, made it, ". . . unlawful for any city or town . . . to impose or collect any tax, fine or other penalty upon any person selling *their* farm and domestic products within the limits of any such town or city outside of and not within the regular market-houses and sheds of such cities and towns."

On February 9, 1898, the General Assembly amended the charter of the city of Roanoke, giving it the authority to establish markets for the city and to confine the sale of farm and domestic products to the public markets and public squares provided for that purpose. In complete variance with the 1896 general act, the special charter amendment permitted the city to levy and collect a curbage tax for each vehicle containing farm and domestic products brought into the city and offered for sale.

The charter amendment was attacked by Chambers, a farmer who was fined because he refused to pay the curbage tax when he stopped his wagon on a street outside market-houses and sheds to sell the farm and domestic products grown and produced on his farm in Roanoke County. Noting that the earlier general statute and the special act amending the charter were "irreconcilably repugnant", the court upheld the charter amendment, saying that it, "must be construed to be a qualified amendment of the general law, and controlling in the locality to which it applies."

The *Chambers* opinion, handed down in 1913, does not discuss the constitutional authority for the special legislation there involved,

enacted prior to the adoption of the Constitution of 1902. But such authority could only have found its source in the forerunner of § 117, that is, in § 20 of Article VI of the Constitution of 1869 (Code of 1887, pp. 42, 43), which permitted special acts for the organization and government of cities, "where, in the judgment of the general assembly, the object of such act cannot be attained by general laws." And the *Chambers* decision could only have been based upon that portion of § 117 which prescribed the conditions under which cities and towns, "having at the time of the adoption of this Constitution [of 1902] a municipal charter may retain the same." As was said in *Powers* v. *Richmond*, 122 Va. 328, 338, 94 S. E. 803:

"Many charters existed in Virginia at the time the new Constitution was adopted, and many of them had and still have special provisions; and section 117 of the Constitution was clearly intended to continue all such special acts, except in so far as they were repealed by the Constitution or by the General Assembly. . . ."

From all of this, we are compelled to say, as did Judge Burks with respect to § 63 in the *Weiss* case, that there is no real conflict between §§ 64 and 117 but, rather, that when each is given its proper field of operation, they are made "to harmonize." As with § 63, § 64 was intended to apply to cases not otherwise specially provided for. Laws for the organization and government of cities and towns were specially provided for in § 117, and that section, and not § 64, must be looked to when the validity of such laws is questioned.

We must take notice of the complainant's argument that the General Assembly was without "the right" to enact special legislation permitting Federal employees to hold office in the city of Falls Church because such employees might be barred from holding office in a county, or in another city.

We are not concerned here with the wisdom of the legislation involved. We are concerned only with whether the legislature had the power to enact it. Clearly, § 117 gives to the legislature the power to enact, by special act, laws for the organization and government of one city which differ from those enacted for another city, and which it might be powerless, in any event, to enact specially for a county.

It is worthy of note that at the last session of the General Assembly, the following municipalities were granted new charters, or amendments to existing charters, which contained provisions permitting certain Federal employees to hold specified offices, from which they might otherwise be barred by Code, § 2-27:

City of Hampton, Acts of 1964, ch. 86, p. 120, at p. 121;
Town of Manassas Park, Acts of 1964, ch. 168, p. 236, at p. 237;
Town of Manassas, Acts of 1964, ch. 170, p. 238;
Town of Herndon, Acts of 1964, ch. 301, p. 512;
Town of Vienna, Acts of 1964, ch. 432, p. 701, at p. 707.

Finally, we turn to the complainant's contention that § 20.14 of the city charter, "has nothing to do with the organization of government of cities."

We find no merit in this contention. It is often said that ours is a government of law and not of men, but it is, after all, the men who qualify under that law who hold the reins of government and perform its functions.

A law which determines the qualifications and capabilities of potential officeholders, which says who may serve or who may not, and which touches upon the political privilege of the election or appointment to and the holding of public office, is surely a law for the organization and government of the jurisdiction affected thereby.

There is no error in the decree appealed from. Accordingly, it will be

*Affirmed.*