Present: All the Justices

J. CHRIS ALDERSON, ET AL.

OPINION BY
v. Record No. 022578    JUSTICE DONALD W. LEMONS
September 12, 2003
COUNTY OF ALLEGHANY

FROM THE CIRCUIT COURT OF ALLEGHANY COUNTY
Duncan M. Byrd, Jr., Judge

In this appeal, we consider whether a special legislative enactment regarding property taxes violates the Constitution of Virginia. Effective July 1, 2001 the City of Clifton Forge reverted to town status. Upon reversion, the residents of the former City of Clifton Forge became residents of Alleghany County and the new town of Clifton Forge. This reversion was accomplished by agreement pursuant to Code § 15.2-3400 and was approved by the Virginia Commission on Local Government and a three-judge court pursuant to §§ 15.2-2907 and 15.2-3000. Left unresolved, however, was the issue of personal property assessment and levy upon citizens of the former City of Clifton Forge.

The 2002 Session of the General Assembly, by vote of 40 – 0 in the Senate and 99 – 0 in the House, passed Senate Bill 246 providing for Chapter 78 of the 2002 Acts of Assembly ("Chapter 78"). The Bill provided that "an emergency exists and this act is in force from its passage." The Governor signed the Bill on March 6, 2002.

Chapter 78 provided that:

1.  § 1.  Notwithstanding any other provision of law, any assessment of tangible personal property as of January 1, 2001, for tangible personal property located in the Town of Clifton Forge, with such assessment being made by the commissioner of the revenue of Alleghany County, shall be valid, regardless that residents of the Town of Clifton Forge were residents of an independent city, the City of Clifton Forge, on January 1, 2001. In addition, the levy or imposition of tangible personal property taxes for the entire 2001 tax year based upon such assessments shall also be valid subject to the following:

1.  Such assessments upon the residents of the Town of Clifton Forge shall be deemed to have been assessments made to levy all tangible personal property taxes upon such persons for a period covering two separate tax years, the first beginning January 1, 2001, through 12:00 p.m. on June 30, 2001, and the second beginning July 1, 2001, through 12:00 p.m. on December 31, 2001;

2.  The tangible personal property assessments by the county commissioner of the revenue on the residents of the Town of Clifton Forge applicable to the tax year beginning January 1, 2001, through 12:00 p.m. on June 30, 2001, shall be deemed to have been assessments made by the commissioner of the revenue of the City of Clifton Forge for such short tax year.  The tangible personal property taxes imposed by the City of Clifton Forge based upon such assessments shall have met the requirement of Article X, Section 1 of the Constitution of Virginia that all property, except as provided in the Constitution, shall be taxed.  In

2

addition, such tangible personal property taxes applicable to the tax year beginning January 1, 2001, through 12:00 p.m. on June 30, 2001, shall be levied at the tangible personal property tax rates in effect in the City of Clifton Forge as of January 1, 2001, but the amount of tax due shall be reduced by one-half to reflect the short tax year beginning January 1, 2001, through 12:00 p.m. on June 30, 2001; and

3. The tangible personal property assessments by the county commissioner of the revenue on the residents of the Town of Clifton Forge applicable to the tax year beginning July 1, 2001, through 12:00 p.m. on December 31, 2001, shall be deemed to have been assessments made by the county commissioner of the revenue on the residents of the Town of Clifton Forge who also became residents of the county on July 1, 2001. The tangible personal property taxes levied by Alleghany County based upon such assessments shall be levied at the tangible personal property tax rates in effect in Alleghany County as of January 1, 2001, but the amount of tax due shall be reduced by one-half to reflect the short tax year beginning July 1, 2001, through 12:00 p.m. on December 31, 2001.

§ 2. Any tangible personal property taxes levied by the Town of Clifton Forge upon town residents for the tax year beginning July 1, 2001, through 12:00 p.m. on December 31, 2001, shall be valid. However, the amount of tax due shall be determined using tangible personal property tax rates in effect in the town as of July 1, 2001, and the amount of tax due shall be reduced by one-half to reflect a short tax year beginning July 1, 2001, through 12:00 p.m. on December 31, 2001.

2. That an emergency exists and this act is in force from its passage.

Chapter 78 validates the assessment of the County Commissioner of Revenue upon property located in the former City of Clifton Forge on January 1, 2001 and validates the levy of taxes by the County for the year 2001 on the following basis:

a. for Town residents the tax year is divided into two "short tax years" representing the first half of the calendar year and the second half of the calendar year;
b. assessments by the County are "deemed" to be assessments by the City in the first short tax year and are levied upon at the tax rate in effect in the City on January 1, 2001 and thereafter reduced by one-half to reflect the shortened period;
c. for the second short tax year, residents of the Town are subject to levy at tax rates in effect in the County as of January 1, 2001 and thereafter reduced by one-half to reflect the shortened period.[1]

Upon assessment and levy by the Commissioner of the Revenue of Alleghany County for personal property taxes for the calendar year 2001, J. Chris Alderson and other citizens of the former City of Clifton Forge ("Taxpayers"), fully paid their property taxes due on a timely basis. Thereafter, pursuant to Code § 58.1-3984, they brought suit in the Circuit Court of Alleghany County "for correction and invalidation of

---

[1] Additionally, Chapter 78 validated any separate taxation imposed by the Town for the tax year 2001 at tax rates in effect as of July 1, 2001 in the Town and thereafter reduced by one-half to reflect the shortened period of town status during 2001. Taxes levied by the new Town of Clifton Forge are not the subject of this appeal.

taxes on tangible personal property" and seeking a refund of taxes paid.  In their suit, Taxpayers did not mention Chapter 78; nonetheless, Taxpayers asserted that "[b]etween January 1, 2001 and December 31, 2001 (or July 1, 2001), the County of Alleghany had no authority, whether by statute, ordinance, or the Constitution of Virginia to tax any personal property physically located and normally garaged in the City of Clifton Forge, Virginia."

Alleghany County demurred and maintained that Chapter 78 authorized the Commissioner of the Revenue of Alleghany County to assess and levy upon personal property garaged in the City of Clifton Forge on January 1, 2001.  After a hearing upon the demurrer, the trial court entered an order declaring that "the Amended Petition should be and it is hereby deemed to allege that said Chapter 78 of the Acts of Assembly (Senate Bill 246) is unconstitutional."  The order further recited that the demurrer remained under advisement.  After submission of briefs and argument of counsel, the trial court issued a letter opinion which was incorporated by reference into the final order.  The letter opinion recited in part that: "Counsel for the petitioner concedes that if Senate Bill 246 is constitutional, then their case becomes moot and the demurrer should be sustained and the petition dismissed."  The final order of the trial court held that Chapter 78 did not

violate the Constitution of Virginia, sustained the demurrer, and dismissed the petition.  Taxpayers appeal the adverse judgment of the trial court.

ANALYSIS

The only question before the Court on appeal is whether Chapter 78 violates the Constitution of Virginia.  Chapter 78 was enacted in response to the unique circumstances arising from the reversion of the City of Clifton Forge to town status.  The Act references Article X, § 1 of the Constitution of Virginia requiring uniformity of property taxation.  "The dominant purpose of [this constitutional provision] is to distribute the burden of taxation, so far as is practical, evenly and equitably."  Board of Supervisors v. Telecommunications Indus., 246 Va. 472, 477, 436 S.E.2d 442, 445 (1993) (quoting R. Cross, Inc. v. City of Newport News, 217 Va. 202, 207, 228 S.E.2d 113, 117 (1976)).  Because "tax day" for the purpose of assessment of personal property in Alleghany County was January 1, 2001 (Code § 58.1-3515), and reversion from status as an independent city to that of a town within Alleghany County was effective July 1, 2001, without the provisions of Chapter 78, Taxpayers would be free from any personal property taxes for the calendar year 2001.  Chapter 78 sought to remedy this potential non-uniformity in the assessment and levy upon personal property.  This isolated

6

remedy provides a solution to a nonrecurring problem. Irrespective of the General Assembly's motivation, the question remains whether Chapter 78 violates the Constitution of Virginia.

Taxpayers' assignments of error are somewhat overlapping and duplicative in nature; however, their challenge to the constitutionality of Chapter 78 is fairly stated and discussed herein.[2] Of course, we must consider these questions with a presumption of validity which attaches to every enactment of the General Assembly. Pulliam v. Coastal Emergency Servs., 257 Va. 1, 9, 509 S.E.2d 307, 311 (1999).

## I.

Taxpayers note that tangible personal property is subject to "local taxation only, and shall be assessed for local taxation in such manner and at such times as the General Assembly may prescribe by general law." Va. Const. Art. X, § 4. Situs for assessment and taxation of Taxpayers' tangible personal property is the City of Clifton Forge on "tax day," January 1, 2001. Code §§ 58.1-3511, 58.1-3515; Shelor Motor Co. v. Miller, 261 Va. 473, 476, 544 S.E.2d 345, 346 (2001).

---

[2] Taxpayers assert that they did not have the opportunity to vote for any public officials of Alleghany County who imposed personal property taxes upon them for 2001; however, Taxpayers make no legal argument to support their contention that such circumstances render Chapter 78 unconstitutional. Accordingly, we will not consider this issue. Rule 5:17.

7

Article X, § 1 of the Constitution of Virginia provides in part that "All property, except as hereinafter provided, shall be taxed. All taxes shall be levied and collected under general laws and shall be uniform upon the same class of subjects within the territorial limits of the authority levying the tax . . . ." Because Taxpayers were residents of the City on January 1, 2001, they argue that they were not "within the territorial limits" of Alleghany County and cannot be subject to taxation by the County.

Article X, § 4 provides that tangible personal property may be made subject to local taxation "in such manner and at such times as the General Assembly may prescribe by general law." It is clear that the determination of situs and "tax day" is within the power of the General Assembly. It has done so with general laws in Code §§ 58.1-3511 and 58.1-3515. But, Article IV, § 14 provides in part that "[t]he General Assembly shall not enact any local, special, or private law" in cases involving "the assessment and collection of taxes."

The Constitution of Virginia also provides for special acts concerning local government. Article VII, § 2 provides in pertinent part: "The General Assembly may also provide by special act for the organization, government, and powers of any county, city, town, or regional government, including such powers of legislation, taxation, and assessment as the General

8

Assembly may determine . . . ."  Under the provisions of Art. VII, § 1, such a special act is defined as "a law applicable to a county, city, town, or regional government and for enactment shall require an affirmative vote of two-thirds of the members elected to each house of the General Assembly."

At first glance, the provisions of Art. IV, § 14 appear in conflict with Art. VII, § 2.  But, this is not our first glance at these provisions of the Constitution.  Sections 63 and 64 of the 1902 Constitution of Virginia are essentially the same as Article IV, §§ 14 and 15 of the 1971 Constitution.  Additionally, § 117 of the 1902 Constitution is essentially the same as Art. VII, § 2 of the 1971 Constitution.  Considering the potential conflict between these provisions under the 1902 Constitution, we held:

> sections 63 and 64 must be read in connection with section 117, [which] was designed to enable municipal corporations, because of their peculiar problems, 'to care for their special interests,' and that, 'Usually this could be done by general laws . . . but the Convention realized that there might be cases where it would be desirable to confer special powers, or special privileges . . . .'

Fallon Florist v. City of Roanoke, 190 Va. 564, 573, 58 S.E.2d 316, 320 (1950) (quoting City of Portsmouth v. Weiss, 145 Va. 94, 106, 133 S.E. 781, 784 (1926)).  Also, in Pierce v. Dennis, 205 Va. 478, 485, 138 S.E.2d 6, 12 (1964), we held that the more specific authorization in § 117 controls over

9

the general restrictions in §§ 63 and 64 and we further stated that "[l]aws for the organization and government of cities and towns were specially provided for in § 117, and that section, and not § 64, must be looked to when the validity of such laws is questioned."  This understanding of the interplay between these two provisions in the Constitution has continued after adoption of the 1971 Constitution.  Infants v. Virginia Hous. Dev. Auth., 221 Va. 659, 675, 272 S.E.2d 649, 658-59 (1980). When an act of assembly involves "the organization, government, and powers of any county, city, town or regional government, including such powers of legislation, taxation, and assessment" the authorization found in Art. VII, §§ 1 and 2 prevails over the restrictions found in Art. IV, § 14.

Chapter 78 most assuredly is special legislation.  It was passed by unanimous vote of both houses of the General Assembly.  It was enacted in the context and aftermath of a reorganization of governmental units, most particularly the dissolution of an independent city and its reversion to the status of a town.  Furthermore, Chapter 78 clearly involves powers of taxation and assessment specifically referenced in Art. VII, § 2.  Chapter 78 does not determine assessments nor does it establish tax rates.  Rather, it creates two short tax years compatible with the date of reversion to town status, validates the assessment of the County and the tax rate of the

10

City for the first short tax year, and validates the assessment of the County and the tax rate of the County for the second short tax year. Chapter 78 has the effect of adjusting the situs requirements provided under general law to adjust for the special and non-recurring circumstances presented in 2001 involving the reversion of the City of Clifton Forge to town status. Chapter 78 had the additional effect of achieving uniformity required by Art. X, § 1 with respect to the citizens of the County. Chapter 78 is not an unconstitutional violation of Art. IV, § 14 because it is specifically authorized by Art. VII, § 2.

## II.

Taxpayers argue that Chapter 78 violates the uniformity requirement of Art. X, § 1 in its imposition of taxes by the County upon former city residents for the second short tax year. They assert that persons moving into the County after January 1, 2001 are not subject to personal property taxes by the County for the year 2001 because there is no proration of personal property taxes. Taxpayers maintain that by reversion to town status, they "moved" into the County effective July 1, 2001. They argue that subjecting them to taxation by the County for the second short tax year while other persons who physically moved into the County after January 1, 2001 are not subject to taxation, results in lack of uniformity.

As previously discussed in section I above, the General Assembly, by the enactment of Chapter 78, in effect, adjusted the general situs and tax day provisions Code §§ 58.1-3511 and 58.1-3515 to meet the special and non-recurring circumstances presented by reversion to town status. Taxpayers did not "move" as they suggest. The structure of government applicable to them changed. The General Assembly was authorized by the provisions of Art. VII, § 2 to address these unique circumstances. Contrary to Taxpayers' argument, Chapter 78 provides greater uniformity in tax burdens than would the situation in which taxpayers would be free from all personal property taxation by the County.

## III.

Taxpayers contend that the retroactivity of Chapter 78 violates the ex post facto prohibition found in Art. I, § 9 of the Constitution of Virginia. The constitutional prohibition against ex post facto laws applies only to criminal proceedings. Huffman v. Commonwealth, 210 Va. 530, 532, 172 S.E.2d 788, 789 (1970).

Additionally, Taxpayers appear to argue that retroactive application of Chapter 78 is unconstitutional because "it attempts to validate the unconstitutional acts of the County," and it violates the rights of Taxpayers "to be free of County taxation of their tangible personal property until next tax

12

year." The General Assembly has the power to enact curative acts with retroactive application provided that such acts are not arbitrary and do not disturb vested rights, impair contractual obligations, or violate due process. <u>Colonial Pipeline Co. v. Commonwealth</u>, 206 Va. 517, 521, 145 S.E.2d 227, 231 (1965). "No one has the vested right to be free of taxation, nor does he have the constitutional right to know that a tax will be levied in such a manner that he may avoid it." <u>Id.</u> Taxpayers do not assert any vested rights that have been disturbed or any contractual obligations that have been impaired. Furthermore, as previously discussed in section I above, the General Assembly did not act arbitrarily or without authority in the enactment of Chapter 78.

IV.

Finally, Taxpayers argue that Art. VII, § 7 provides that "[n]o ordinance or resolution appropriating money exceeding the sum of five hundred dollars, imposing taxes, or authorizing the borrowing of money shall be passed except by a recorded affirmative vote of a majority of all members elected to the governing body." Taxpayers appear to assert that this constitutional provision "trumps" the authority granted by Art. VII, § 2 and because Chapter 78 is not a local ordinance, the imposition of taxes is unconstitutional. Taxpayers misconstrue the effect of Chapter 78. Chapter 78 does not

enact any ordinance, impose any tax, or set any tax rate. Rather, Chapter 78 validates the assessment and levy of taxes under existing ordinances and establishes two short tax years to accommodate the change in government structure. It does so by special act adjusting general situs and tax day provisions in this unique and non-recurring situation.

CONCLUSION

We hold that Chapter 78 does not violate the Constitution of Virginia. Accordingly, the judgment of the trial court will be affirmed.

Affirmed.