COURT OF APPEALS OF VIRGINIA

Present: Judges Chaney, Frucci and Senior Judge Annunziata
Argued by videoconference

**PUBLISHED**

TYSONS CORNER HOTEL PLAZA LLC

v.     Record No. 1655-23-4

FAIRFAX COUNTY

OPINION BY
JUDGE ROSEMARIE ANNUNZIATA
OCTOBER 29, 2024

FROM THE CIRCUIT COURT OF FAIRFAX COUNTY
John M. Tran, Judge

Zachary Williams (Carly M. Celestino; Venable LLP, on briefs), for
appellant.

Martin R. Desjardins, Assistant County Attorney (Elizabeth D.
Teare, County Attorney; Daniel Robinson, Senior Assistant County
Attorney, on brief), for appellee.

Tysons Corner Hotel Plaza LLC (TCHP) challenges Fairfax County's real estate tax

assessments for tax years 2018, 2019, and 2020. The circuit court granted the County's motion

to strike at the close of all the evidence and dismissed TCHP's claims with prejudice because

TCHP failed to rebut the tax assessments' presumptive correctness under Code § 58.1-3984(B).

On appeal, TCHP asserts that the circuit court erred by granting the County's motion to strike

because the tax assessments were not based on fair market value, violated generally accepted

appraisal practices, and were nonuniform. For the reasons that follow, we affirm.

BACKGROUND

I. TCHP's Property and Real Estate Tax Assessments

TCHP owns a parcel of land adjacent to the Tysons Corner Center mall in Fairfax. The

parcel includes the Hyatt Regency Tysons Corner Center Hotel (the Hyatt Hotel), a standalone

Shake Shack restaurant, and an open-air plaza connecting both buildings to the mall. A restaurant

known as the Barrel & Bushel is located on the first floor of the Hyatt Hotel and is accessible from the hotel's lobby. The Hyatt Corporation manages the day-to-day operations of the Hyatt Hotel, including the Barrel & Bushel. In exchange, TCHP pays the Hyatt Corporation a management fee and compensates its employees. By contrast, TCHP leases the Shake Shack building to a third-party operator.

Between 2018 and 2020, the County used a computer-assisted mass appraisal system to assess the fair market value of TCHP's real property for taxation purposes. Each appraisal "incorporated property-specific characteristics," including "information about [the] property's location, age, physical dimensions and characteristics, income and expenses, and comparable properties." Furthermore, each appraisal assessed the fair market value of TCHP's real property based on the income, cost, and sales approaches to valuation in accordance with the standards of the International Association of Assessing Officers (IAAO).[1] The parties agree that the income approach is the most reliable approach for estimating the fair market value of TCHP's real property.[2] The parties also agree that an estimate of the fair market value of TCHP's real property should exclude the property's business value.

The County used an income approach known as the "Rushmore" method to calculate the fair market value of the Hyatt Hotel building and account for the hotel's business value.[3] The County began its calculations under the Rushmore method by estimating the Hyatt Hotel's net operating income. Relevant to this appeal, the County included the Barrel & Bushel's projected

---

[1] "Taxing authorities commonly use one or more of three valuation approaches: the cost approach, the income approach, and sales approach." *McKee Foods Corp. v. County of Augusta*, 297 Va. 482, 496 (2019).

[2] The income approach "measures market value as the present worth of monetary benefits anticipated to be derived in the future from ownership of the asset." *McKee Foods*, 297 Va. at 496 (quoting *Western Refin. Yorktown, Inc. v. County of York*, 292 Va. 804, 813 (2016)).

[3] The Rushmore method is sometimes referred to as the management fee method.

revenue and expenses in its estimates. The County also subtracted the Hyatt Corporation's management fee and the hotel's "reserve expense" from its estimates.[4]

The County ultimately estimated that the Hyatt Hotel's net operating income was $10,686,033 in 2018, $10,153,134 in 2019, and $10,905,931 in 2020. To determine the hotel's fair market value, the County divided its estimates by a hotel capitalization rate of approximately eight percent and subtracted the value of the hotel's personal property.[5] Based on the foregoing methodology, the County determined that the fair market value of the Hyatt Hotel building was $118,705,975 in 2018, $125,299,224 in 2019, and $135,886,769 in 2020.

The County independently assessed the fair market value of the Shake Shack building by using a "market rent" income approach. Under that approach, the County estimated the net rental operating income generated by the Shake Shack building, which it then divided by a restaurant capitalization rate of approximately six percent. The County thus determined that the fair market value of the Shake Shack building was $1,897,830 in 2018, $1,964,610 in 2019, and $2,289,030 in 2020.

Based on its calculations, the County ultimately assessed real estate taxes against TCHP's property in the following amounts: $1,741,545 for tax year 2018, $1,868,722.51 for tax year 2019, and $2,001,476.47 for tax year 2020 (the Tax Assessments). TCHP paid the Tax Assessments.

---

[4] A reserve expense is "[a]n allowance that provides for the periodic replacement of building components, and furniture, fixtures, and equipment, which deteriorate and must be replaced during the building's economic life."

[5] Notably, the County reduced its capitalization rate due to the hotel's "proximity to [the] [m]etro."

II.  The Marriott Hotel

The Courtyard by Marriott Tysons (the Marriott Hotel) is located near TCHP's property. The Marriott Hotel contains a restaurant known as The Bistro, which is operated by Marriott and accessible from the hotel's lobby.  A third party rents a portion of the first floor of the hotel, which it independently operates as a Fleming's Steakhouse and Wine Bar.  Although Fleming's is accessible from the interior and exterior of the hotel, it is separated from the hotel by interior walls.[6]  The Marriott Hotel has a special exception from the Fairfax County Board of Supervisors to include an "independent . . . eating establishment" in its building.

Between 2018 and 2020, the County used its mass appraisal system to determine the fair market value of the Marriott Hotel building.  In doing so, the County valued the portion of the Marriott Hotel managed by Marriott, including The Bistro, separately from the portion of the hotel occupied by Fleming's.  The County determined the fair market value of the Marriott portion of the hotel by using the Rushmore method and included The Bistro's projected revenue and expenses in its estimates of the hotel's net operating income.  By contrast, the County determined the fair market value of Fleming's portion of the hotel by using a market rent income approach.  The County used a hotel capitalization rate to determine the fair market value of Fleming's real estate, rather than a restaurant capitalization rate, because Fleming's is located inside the Marriott Hotel.

III.  TCHP's Tax Assessment Challenge

TCHP appealed the Tax Assessments to the Fairfax County Board of Equalization of Real Estate Assessments asserting that the County assessed its real property for more than fair market value and failed to uniformly apply its methodology to other similar properties.  The Board reduced the County's valuation of TCHP's real property for tax year 2018 by approximately three million

---

[6] To reach Fleming's from the lobby of the Marriott Hotel, guests must pass through a glass door, which leads to Fleming's rear entrance.

- 4 -

dollars but affirmed the remaining Tax Assessments. TCHP subsequently appealed the Tax Assessments to the circuit court.

The case proceeded to a bench trial, during which TCHP introduced testimony from a county employee who generally explained the County's assessment methodology as recounted above.[7] TCHP also introduced testimony from its corporate designee, David Caudill, who testified about the Hyatt Hotel's business operations. According to Caudill, the Hyatt Hotel's food and beverage department, including the Barrel & Bushel, generated approximately 38% of the hotel's revenue between 2017 and 2019. The food and beverage department's actual net revenue totaled $4,288,428 in 2017, $5,032,423 in 2018, and $5,148,477 in 2019.

TCHP further introduced testimony from David Lennhoff, an expert real estate appraiser who had performed "a couple hundred" hotel appraisals. As a preliminary matter, the circuit court prohibited Lennhoff from testifying about the reasonableness of the County's assessment methodology because such opinions were outside the scope of his expert designation. As a result, the circuit court only considered Lennhoff's testimony with respect to "his calculation of the fair market value of [TCHP's] property and his explanation on why his methodology is correct."

Lennhoff testified that he appraised TCHP's real property for tax years 2018, 2019, and 2020 based on "what a typical hotel purchaser would have foreseen on each specific valuation date, without the benefit of hindsight." Lennhoff used what he referred to as the "parsing income method," rather than the Rushmore method, to estimate the fair market value of the Hyatt Hotel. According to Lennhoff, the parsing income method had existed for "a long time" and had been "written about . . . a lot." He also claimed that he had used the parsing income method on behalf of

---

[7] TCHP did not offer the employee as an expert witness, and the employee did not opine on the reasonableness of the County's methodology.

"local hotel companies for years," which he opined was "tantamount to market evidence" supporting the methodology.

Lennhoff began his calculation of the fair market value of the Hyatt Hotel building by estimating its net operating income for the relevant tax years. Unlike the County, he did not include the Barrel & Bushel's projected revenue and expenses in his estimates because he believed doing so would fail to exclude the restaurant's intangible business value. In support of his decision, Lennhoff opined that hotel restaurants were typically "loss leader[s]" whereas the Barrel & Bushel was a "profit center."

To account for the value of the real property occupied by the Barrel & Bushel, Lennhoff included a hypothetical "proxy rent" that a restauranteur would pay TCHP to operate the Barrel & Bushel in his estimates. Relying on published sources cited in his report, Lennhoff opined that restauranteurs typically rent a restaurant for between six and eight percent of the restaurant's gross sales. Lennhoff further opined that a higher percentage would be appropriate in the case of a hotel restaurant because the operator of the hotel would remain responsible for certain expenses, "such as kitchen equipment." As a result, Lennhoff calculated his hypothetical proxy rent as nine percent of the Hyatt Hotel's food and beverage revenue and estimated that the Barrel & Bushel, if leased to a third party, would have generated approximately a million dollars in rental income for each tax year. Furthermore, Lennhoff excluded the entirety of the Hyatt Hotel's food and beverage expenses from his estimates because such expenses would be "the tenant's responsibility."

Lennhoff continued his calculation of the Hyatt Hotel's net operating income by subtracting the Hyatt Corporation's management fee and the hotel's reserve expense. He then subtracted other fixed expenses and the value of the hotel's tangible personal property. Finally, Lennhoff accounted for the hotel's start-up costs, brand value, and other costs "associated with owning personal property." In sum, Lennhoff estimated that the Hyatt Hotel's net operating income was $5,746,000

in 2018, $5,866,700 in 2019, and $5,783,500 in 2020.[8]  After dividing his estimates by an approximately eight percent capitalization rate, which he adjusted to account for the Hyatt Hotel's "excellent location in Tysons Corner," Lennhoff opined that the fair market value of the Hyatt Hotel building was $77,200,000 in 2018, $73,200,000 in 2019, and $72,300,000 in 2020.

During cross-examination, Lennhoff admitted that he was not an expert on mass appraisals and that he did not review any "specific leases" to compute his proxy rent.  Lennhoff also conceded that some tax assessors do not follow his methodology and use other methodologies, such as the Rushmore method, to value hotel real estate.  In addition, the County identified a treatise, to which Lennhoff had contributed, recognizing that "[a]dvocates" of the Rushmore method believe that accounting for a hotel's management fee and operating expenses renders "any remaining net income . . . attributable to the real property."

The County moved to strike at the conclusion of TCHP's case-in-chief, and the circuit court took its motion under advisement.  Thereafter, the County introduced testimony from its expert real estate appraiser, Deborah Haskell.[9]  Haskell opined that the Rushmore method is "widely accepted" as the industry standard "for determining the fair market value of real estate of a hotel and for separating any business and non-realty value."  By contrast, Haskell opined that Lennhoff's alternative methodology, which she referred to as the business enterprise value (BEV) approach, is not "widely used."  She acknowledged that there was an "ongoing controversy among appraisers . . . whether the Rushmore approach or the BEV method is the most appropriate for the valuation of lodging facilities."  According to Haskell, a hotel valuation methodology should reflect "actual buyers' and sellers' actions when they're looking to buy or sell a hotel."  She criticized Lennhoff's

---

[8] Lennhoff opined that the hotel's revenue "indirectly capture[d]" the value of the open-air plaza on TCHP's property.

[9] Haskell did not appraise the fair market value of TCHP's real property, but instead "evaluate[d] the completeness of" Lennhoff's appraisal.

report for failing to include market data demonstrating that a buyer or seller would rely on his methodology or to support his application of a proxy rent.

IV.  The Circuit Court's Judgment

After the close of all the evidence, the County renewed its motion to strike asserting that TCHP failed to prove that the County erred in determining the fair market value of TCHP's real property or that the Tax Assessments were nonuniform.  In opposition, TCHP argued that its evidence established that the Tax Assessments were inflated, failed to exclude the Hyatt Hotel's business value as required by generally accepted appraisal practices, and were nonuniform when compared to the Marriott Hotel.

The circuit court found that TCHP did not prove that the County overestimated the fair market value of TCHP's real property because Lennhoff's opinion lacked "credibility."  The circuit court explained that Lennhoff's "self-selected methodology" ignored "available data" and relied on "speculative hypotheticals."  The circuit court added that Lennhoff's opinions were "inherently incredible" because he dismissed the value of the Hyatt Hotel's location and referred to most hotel restaurants as "loss leader[s]."  The circuit court further found that the Tax Assessments did not violate generally accepted appraisal practices and were uniform.

Based on its findings, the circuit court ruled that TCHP failed to rebut the presumption of correctness afforded to the Tax Assessments under Code § 58.1-3984(B).  As a result, the circuit court granted the County's renewed motion to strike and dismissed TCHP's claims with prejudice. TCHP appeals.

STANDARD OF REVIEW

A trial court may grant a motion to strike when "it is conclusively apparent that [the] plaintiff has proven no cause of action against [the] defendant." *Brown v. Koulizakis*, 229 Va. 524, 531 (1985) (quoting *Leath v. Richmond, Fredericksburg and Potomac R. R. Co.*, 162 Va.

705, 710 (1934)). When ruling on a motion to strike made at the conclusion of the plaintiff's evidence, a trial court must "accept as true all the evidence favorable to the plaintiff as well as any reasonable inference a jury might draw therefrom which would sustain the plaintiff's cause of action" unless the evidence "would defy logic and common sense." *Austin v. Shoney's, Inc.*, 254 Va. 134, 138 (1997). "When a motion to strike the plaintiff's evidence is made or renewed at the end of all evidence, the trial court may also consider the evidence presented during the defendant's case in considering the motion." *Id.* "Nonetheless, it must still view the evidence and all its reasonable inferences in the light most favorable to the plaintiff." *Id.* Accordingly, when reviewing a trial court's decision to grant a motion to strike the evidence, we likewise "view the evidence presented at trial in the light most favorable to the plaintiff and accord the plaintiff the benefit of any inferences that may be fairly drawn from the evidence." *Gloss v. Wheeler*, 302 Va. 258, 278 (2023) (quoting *Curtis v. Highfill*, 298 Va. 499, 502-03 (2020)).

ANALYSIS

Localities enjoy a "presumption of correctness" in their assessments of real property. Code § 58.1-3984(B) ("[T]here shall be a presumption that the valuation determined by the assessor or as adjusted by the board of equalization is correct."); *see also Portsmouth 2175 Elmhurst, LLC v. City of Portsmouth*, 298 Va. 310, 321 (2020) (noting the "presumption of correctness" afforded to tax assessments). To rebut this presumption, a taxpayer must prove by a preponderance of the evidence that (1) "the property in question" is "valued at more than its fair market value" or "the assessment is not uniform in its application" and (2) the assessment "was not arrived at in accordance with generally accepted appraisal practices . . . and applicable Virginia law relating to valuation of property." *Portsmouth*, 298 Va. at 321.

TCHP asserts that the circuit court erred by granting the County's motion to strike because the evidence rebutted the Tax Assessments' presumptive correctness in two ways. First, TCHP

argues that the evidence demonstrated that the County overestimated the fair market value of TCHP's real property and violated generally accepted appraisal practices. Second, TCHP argues that the evidence demonstrated that the Tax Assessments were nonuniform and thus unconstitutional. We address each argument in the order presented.

I. TCHP Presented Prima Facie Evidence That the County Overvalued Its Real Property

TCHP contends that the circuit court erred by granting the County's motion to strike because Lennhoff's testimony established that the County overestimated the fair market value of TCHP's real property. After examining the record, we agree that TCHP presented prima facie evidence that the County overvalued its real property under Lennhoff's methodology.

Lennhoff used the parsing income method, sometimes referred to as the business enterprise value method, to estimate the fair market value of TCHP's real property. After explaining his methodology and calculations, Lennhoff opined that the County overvalued the Hyatt Hotel building by approximately 50 million dollars during each of the tax years at issue. Such testimony, if accepted, is prima facie evidence that the County overvalued TCHP's real property. *Id.* at 322 (explaining that "a significant disparity between fair market value and assessed value is certainly one way to prove . . . that the property 'is valued at more than its fair market value'").

The circuit court did not accept Lennhoff's testimony because it lacked "credibility." In support of its decision, the circuit court found that Lennhoff's methodology was "self-selected" and relied on "speculative hypotheticals." The circuit court also found that Lennhoff's opinions were "inherently incredible" because he failed to consider the Hyatt Hotel's location and characterized most hotel restaurants as "loss leader[s]."

A circuit court "must not judge the weight or credibility of evidence" when ruling upon a motion to strike. *Gloss*, 302 Va. at 278 (quoting *Dill v. Kroger Ltd. P'ship I*, 300 Va. 99, 109 (2021)). Contrary to the circuit court's findings, the evidence, when viewed in the light most

- 10 -

favorable to TCHP, showed that Lennhoff's methodology had existed for "a long time," was used by local hotels, and was subject to debate among appraisers. Moreover, Lennhoff adjusted his capitalization rate when determining the fair market value of the Hyatt Hotel building to account for its "excellent location." Finally, Lennhoff's use of a hypothetical proxy rent to exclude the Barrel & Bushel's business value did not defy logic or common sense. Indeed, the County used a market rent approach to estimate the fair market value of the Shake Shack building and the portion of the Marriott Hotel operated by Fleming's. To value the portion of the Hyatt Hotel building occupied by the Barrel & Bushel in a similar manner, Lennhoff relied on published sources cited in his report to estimate what a third party would have paid to rent the restaurant during the relevant tax years.

Although Lennhoff's methodology may be subject to criticism, the circuit court erred by failing to accept the foregoing evidence as true and by judging Lennhoff's credibility when ruling on the County's motion to strike. *Gloss*, 302 Va. at 278. As a result, the circuit court further erred by finding that TCHP failed to present prima facie evidence that the County overvalued its real property under Lennhoff's methodology. These errors, however, were harmless because, as discussed below, the circuit court properly found that TCHP failed to introduce evidence showing that the Tax Assessments violated generally accepted appraisal practices or applicable Virginia law. *See* Code § 58.1-3984(B) (requiring that the taxpayer also prove that the assessment "was not arrived at in accordance with generally accepted appraisal practices . . . and applicable Virginia law" to rebut the assessment's presumptive correctness).

II. The Tax Assessments Did Not Violate Generally Accepted Appraisal Practices

TCHP cannot overcome the Tax Assessments' presumptive correctness by proving only that the County overvalued its real property under Lennhoff's methodology. *Portsmouth*, 298 Va. at 321. Indeed, our Supreme Court has cautioned that "[t]he value of property is a matter of opinion and there must necessarily be left a wide room for the exercise of opinion, otherwise courts

will be converted into assessing boards." *Id.* at 324 (quoting *City of Norfolk v. Snyder*, 161 Va. 288, 292 (1933)). To overcome the Tax Assessments' presumptive correctness, TCHP must also prove that the Tax Assessments were "not arrived at in accordance with generally accepted appraisal practices . . . and applicable Virginia law relating to valuation of property." Code § 58.1-3984(B).

The circuit court did not err by finding that TCHP failed to prove that the Tax Assessments violated generally accepted appraisal practices or applicable Virginia law. When viewed in the light most favorable to TCHP, the record reflects that the County used the Rushmore method, in accordance with the standards of the IAAO, to separate the Hyatt Hotel's business value from its real estate value. In addition, the circuit court limited Lennhoff's testimony to the scope of his expert designation, which did not include the reasonableness of the County's methodology. Moreover, Lennhoff recognized that some tax assessors use the Rushmore method to assess the value of hotel real estate, and Haskell opined that the method is "widely accepted" as the industry standard. In sum, TCHP failed to introduce any evidence impeaching the County's methodology.[10]

TCHP argues that it nevertheless rebutted the Tax Assessments' presumptive correctness by demonstrating that the County's mass appraisal "significantly inflated" the fair market value of the Hyatt Hotel building. The Supreme Court has recognized that a mass appraisal, which jointly assesses multiple properties, may be "unreasonable, inconsistent, or inaccurate when applied to a specific property." *Portsmouth*, 298 Va. at 323. In other words, even a generally accepted mass appraisal methodology "may yield an anomalous result owing to the peculiar characteristics or uses

---

[10] TCHP argues that Haskell's testimony, "[b]y omission and/or direct testimony," conceded that the County violated generally accepted appraisal practices by (1) failing to deduct the value of the Hyatt Hotel's personal property before applying the appropriate capitalization rate and (2) accounting for the hotel's estimated reserve expenses as a means of excluding intangible business value. Haskell testified, however, that there were other methods to account for the value of the hotel's personal property and that she had "no problem" with accounting for a "replacement reserve." Moreover, as TCHP points out on appeal, Haskell reviewed Lennhoff's appraisal but "had no opinions related to the [Tax Assessments]."

of a property." *Id.* Accordingly, a taxpayer may rebut a tax assessment's presumptive correctness by proving that a mass appraisal "has indefensibly inflated the fair market value of the property." *Id.*

Although TCHP contends that the County significantly overvalued its real property, it does not attribute any defect in the County's valuation to its use of a mass appraisal. For instance, TCHP does not argue that the County's mass appraisal failed to account for the peculiar characteristics of its real property leading to anomalous assessments or that the County's methodology would have yielded a correct result if used to appraise TCHP's real property individually. Indeed, TCHP conceded at trial that "[t]his case isn't about mass appraisal." Instead, as TCHP recognized, "[t]his is a case about how [to determine the] fair market value of real estate." In the context of a mass appraisal, "[m]inor differences of opinion concerning fair market value . . . will not suffice to rebut the presumption of correctness." *Id.* at 324. For the foregoing reasons, the circuit court did not err by ruling that TCHP failed to rebut the Tax Assessments' presumptive correctness based on the County's valuation of TCHP's real property.

III. The Tax Assessments Were Uniform

Article X, Section 1 of the Constitution of Virginia provides in relevant part that all taxes "shall be uniform upon the same class of subjects within the territorial limits of the authority levying the tax." The uniformity requirement's "dominant purpose 'is to distribute the burden of taxation, so far as is practical, evenly and equitably.'" *Int'l Paper Co. v. County of Isle of Wight*, 299 Va. 150, 178 (2020) (quoting *Alderson v. County of Alleghany*, 266 Va. 333, 339 (2003)). "Uniformity, however, does not require 'perfect equality,' nor does the 'mere inequality in the result' of a property tax, alone, violate uniformity." *Id.* (quoting *Richmond Linen Supply Co. v. City of Lynchburg*, 160 Va. 644, 648 (1933)). "Instead, uniform taxation is 'the principle that those who are similarly situated should be *treated* in a like manner by the law.'" *Id.* (quoting *Bd.*

*of Supervisors v. Leasco Realty, Inc.*, 221 Va. 158, 179 (1980)).  To prove nonuniformity, "it must plainly appear that the appraisal upon which the assessment was made is out of line generally with appraisals of other neighborhood properties, which in character and use bear some relation to that of the taxpayer." *Leasco Realty, Inc.*, 221 Va. at 166.

TCHP contends that the County did not uniformly tax the Hyatt and Marriott hotels.  In support of its position, TCHP points out that the County used a market rent approach to determine the fair market value of Fleming's but did not do so for the Barrel & Bushel despite the restaurants being "alike in many ways."  TCHP also suggests that the County's use of a hotel capitalization rate to determine the fair market value of the Fleming's restaurant space demonstrates that Fleming's, like the Barrel & Bushel, should be considered a part of the hotel in which it is located.  We disagree.

The Hyatt and Marriott hotels each include a restaurant operated by a hotel-management company as a part of the hotel's business.  The County assessed each portion of real estate operated as a hotel by using the Rushmore method.  Unlike the Hyatt Hotel, however, the Marriott Hotel includes an additional commercial space leased by an independent third party, as authorized by a special exception.  The County determined the value of that additional commercial space by using a market rent approach, which was the same approach it used to determine the value of the leased Shake Shack restaurant building.

The foregoing evidence, even when viewed in the light most favorable to TCHP, demonstrates that the County uniformly assessed each portion of real estate operated as a hotel by using the Rushmore method and each portion of real estate leased by a third party using the market rent approach.  Furthermore, the County uniformly chose its capitalization rates when assessing each leased restaurant based on whether the restaurant was located within a hotel.  Accordingly, the

circuit court was not plainly wrong in finding that the Tax Assessments were uniform and granting the County's renewed motion to strike.

CONCLUSION

For the foregoing reasons, the circuit court's judgment is affirmed.

<em>Affirmed.</em>